# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLORADO

06 - CV - 02241

# PLAINTIFF PETITIONERS CLASS ACTION PETITION FOR PRELIMINARY/ PERMANENT INJUNCTIVE RELIEF

RECEIVED
UNITED STATES DISTRICT COURT
DENVER, COL

OCT 3 0 2006

GREGORY C. LANGHAM
CLERK

## CASE NUMBER _____

## BY JON VAUPEL Representing-

Murphy Wamala, Khalid Agina, Mario Jean-Baptiste
Le Man, Hung Tran, Khalid Wahab,
Tran Loi, Stanley Harmon, Chinh Nguyen
Alfredo Farinas-Perez, Igor Margatskiy,
Gerald Nkwanga, Francis Johnson, Kwabena Essuman
Anerobi Ngwabe, O'Neil Stewart, Yemane Haile
Gerald Remy, Riziki Temu, Jose Zamorano
Arben Kola, Rovey Morm, Benad Abiodun,
Franciso Banal-Martinez, Roy Berko,
Vakhom Xayamoungkhoun and Christopher Lukanga,
And all present and future ICE Detainee's

**PLEASE NOTE**: ICE Detention Standard can be found at
http://www.ice.gov/partners/dro/opsmanual/index.htm

# TABLE OF CONTENTS

CONTENTS ................................................................ Page Usage

I BACKGROUND ........................................................................ 6

II CUSTODY ............................................................................. 6

III JURISDICTIONS ................................................................. 7

IV VENUE ............................................................................... 8

V PARTIES ............................................................................. 8

VI CLASS ACTION PREREQUISTES ...................................... 10

  1. The Four Requirements Needed to Satisfy Class Action Prerequisites ........ 10

  2. Satisfaction of the Class Action Prerequisites ........................ 10

VII CLAIMS AND RELIEF SOUGHT .................................... 11

  1. DENIAL OF ACCESS TO LEGAL MATERIALS ........................ 11

    A. Law Library- General ......................................... 12

    B. Law Library Equipment Provided ......................... 13

    C. Inadequate Law Library Holdings ........................ 14

    D. ICE Counsel's Failure to Update Legal Materials ........... 16

    E. NON Replacement of Materials ............................ 17

    F. Hours of Access ............................................ 17

    G. Photocopying of Legal Documents ........................ 19

    H. Envelopes and Stamps for Legal Documents ............ 21

    I. Notice to Detainees ........................................ 21

    J. Retaliation Prohibited ..................................... 22

    K. Law Library   Relief Sought ................................ 23

  2. BELOW STANDARD MEDICAL CARE AND NO PSYCH CARE ........ 24

    A. Medical Care – General ..................................... 25

    B. Medical Screening (New Arrivals) ........................ 26

    C. Insufficient Dental Treatment ............................ 27

    D. Ineffective Sick Call ....................................... 28

    E. 24 Hour Emergency Medical Treatment ................... 31

    F. Inaccurate Delivery of Medication ........................ 31

    G. No Medical Allowances for Special Needs ............... 32

    H. Failure to Transfer Medical Records ..................... 36

    I. Medical Issues Relief Sought ............................. 37

**3. NON COMFORMITY REGARDING TELEPHON SERVICE** ...................... 38

A. Denial of Reasonable and Equitable Telephone Access ................................... 39

B. Failure of Park County to Permit Direct and Free Calls ................................. 42

C. NON Standard Telephone Usage Restrictions ...............................................45

D. Denial of Incoming Calls ................................................................................ 46

E. Unacceptable Telephone Restrictions for those in S.M.U............................... 47

F.NO Privacy for Telephone Calls on Legal Matters .......................................... 48

G. Unlawful Monitoring of Detainee Telephone Calls ........................................ 50

H. Telephone Access Relief Sought ..................................................................... 51

**4. VIOLATIONS OF ICE STANDARDS – CORRESPONDENCE–MAIL**....... 52

A. Failure to Provide Adequate Detainee Notification ........................................ 53

B. Inspection of Incoming Correspondence and Other Mail ............................... 55

C. Inspection of Outgoing Correspondence and Other Mail ................................ 55

D. Rejection of Incoming and Outgoing Mail ..................................................... 56

E. ICE Detainee's Requirement for Postage Allowance ...................................... 57

F. Failure to Supply ICE Detainees with Pens, Paper and Envelopes ................. 58

G. Correspondents with Representatives of the News Media .............................. 59

H. Relief Sought Regarding Correspondence and Other Mail ............................ 59

**5. INSUFFICIENT PROCESS ICE ADMISSION/RELEASE PROCEDURE**...60

A. New Arrivals ................................................................................................... 61

B. Failure to Provide Required Personal Hygiene Items ..................................... 62

C. Failure to Provide Orientation Production for ICE Detainees ......................... 64

D. Orientation Relief Sought ............................................................................... 65

**6. NON CONFORMITY WITH ICE DETAINEE CLASSIFICATION SYS**..... 66

A. Failure to Implement the Required Standards and Procedures ........................ 67

B. The Required Classification Levels and Housing Assignments ...................... 68

C. Housing Assignments ...................................................................................... 70

D. Classification Relief Sought ............................................................................ 71

**7. NON CONFORMITY WITH ICE DETAINEE GRIEVACNE PROCESS**.... 72

A. Informal or Oral Grievances ........................................................................... 73

B. Insufficient and Inadequate Formal Written Grievance Procedures ............... 74

C. Failure of the Grievance Procedure with in ICE ............................................. 76

D. Grievance Process Relief Sought .................................................................... 77

**8. NO PRODUCTION & DISTRIBUTION - ICE DETAINEE HANDBOOK**... 77

   A. Non Compliance with Handbook Standards and Procedures .......................... 78

   B. Detainee Handbook Relief Sought ........................................................... 79

**9. NON COMPIANCE - STAFF, ICE, DETAINEE COMMUNICATION** ....... 80

   A. ICE's Failure to Conduct Scheduled Contact with Detainees ........................ 80

   B. Failure to Adequately Respond to Requests from ICE Detainees.................... 83

   C. Inadequate Response Times ................................................................... 83

   D. ICE Detainee Communication Relief Sought ............................................ 85

**10. VIOLATIONS RE ISSUANCE & EXCHANGE CLOTHING , LINENS**.... 85

   A. Failure to Adhere to Standard and Procedures .......................................... 86

   B. Clothing, Bedding, Linen and Towel Supply ............................................ 86

   C. NON Compliance Regarding Issuance of Clothing ..................................... 87

   D. NON Compliance Re: Clothing Bedding Linen Towel Exchange .................. 89

   E. Clothing and Linen Exchange Relief Sought ............................................ 89

**11. NON COMPLIANCE WITH RECREATION REQUIREMENTS** ............. 90

   A. Requirements for Recreation ................................................................. 91

   B. Park County Outdoor Recreation Offerings .............................................. 91

   C. Park County Indoor Recreation Offerings ................................................ 92

   D. Determining What is Meaningful Recreation? ........................................... 93

   E. Failure to Meet the Minimum Requirements for Program Content ................. 93

   F. Transfer Option When No Meaningful Recreation Options are Available ...... 97

   G. Recreation Relief Sought ..................................................................... 98

**12. FAILURE OF ICE OFFICERS TO CONDUCT CUSTODY REVIEWS** .... 98

   A. ICE Officers Failure to Conduct Timely Custody Reviews .......................... 99

   B. ICE Officers Failure to Issue Required Notice Prior to Custody Review ...... 101

   C. Custody Review Relief Sought .............................................................. 102

**VIII PETITION FOR PRELIMINARY INJUNCTIVE RELIEF** ........................... 103

   A. Standard of the Review ....................................................................... 103

    1. Likelihood of Success on the Merits in the Petitioners Case ....................... 104

    2. Irreparable Harm Absent the Restraining Order ...................................... 105

    3. Balance of Harms ............................................................................ 105

    4. Public Interest ................................................................................ 107

**IX MOTION FOR APPOINTMENT OF CLASS COUNSEL** ........................... 108

**X PRAY FOR RELIEF** .................................................................................. 109

**XI CONCLUSION** ....................................................................................... 110

   .................................................................................................. 111

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| **JON VAUPEL,** Representing- Murphy Wamala, Mario Jean-Baptiste, Khalid Agina, Le Man, Hung Tran, Khalid Wahab, Tran Loi, Stanley Harmon, Chinh Nguyen, Alfredo Farinas-Perez, Igor Margatskiy, Gerald Nkwanga, Francis Johnson, Kwabena Essuman, Anerobi Ngwabe, O'Neil Stewart, Gerald Remy, Riziki Temu, Jose Zamorano Arben Kola, Rovey Morm, Benad Abiodun, Franciso Banal-Martinez, Roy Berko and Vakhom Xayamoungkhoun, Yemane Haile Christopher Lukanga, (Hereinafter Petitioners) | AGY. No. A78-443-731 |

Petitioners,

v.

**ALBERTO R. GONZALES,**
United States Attorney General,

**MICHAEL CHERTOFF,**
Secretary of Homeland Security,

**DOUGLAS MAURER,**
USICE Field Office Director
For Colorado,

**FREDRICK WEGENER**
Sheriff of Park County,

**LT. DANIEL MULDOON**
Park County Detention Center Administrator

Respondents,

CASE NUMBER

_____

# CLASS ACTION PETITION FOR EMERGENCY
# PRELIMINARY AND MANDATORY INJUNCTIVE RELIEF

**COMES NOW** Plaintiff/Petitioner Jon Vaupel representing all captioned Petitioners, including all present and future unknown Petitioners, proceeding Pro Se hereby before this Honorable District Court, files this **"Class Action Petition for Emergency Preliminary and Mandatory Injunctive Relief"** therefore the Petitioners respectfully petition this Honorable District Court for an order of

Preliminary and Permanent Injunctive Relief to remedy the Petitioner's continued unlawful detention conditions at the Park County Detention Center by the Respondents. In support of this Class Action Petition and Complaint for Injunctive Relief pursuant to Fed.R.Civ.P. Rules 23(a), (b) and 65, the Petitioners alleges as follows:

## I BACKGROUND

The Petitioners, being all Immigration and Customs Enforcement (ICE) Detainees, prior May 31, 2006, were all housed at the Federal GEO/ICE Detention Facility in Aurora, Colorado. Between the dates of May 31, 2006, and October 11, 2006, the above captioned Petitioners were all relocated, without warning, to the Park County Detention Center in Fairplay, Colorado, approximately 100 miles South West of the ICE Detention Facility in Aurora Colorado. The Park County Detention Center is effectively a County Jail as such and is generally kept at capacity by contracting out its bed space to whichever Correctional or Detention organization is interested. This includes a contract held between the Department of Homeland Security, Immigration and Customs Enforcement and the Park County Detention Center.

## II CUSTODY

Petitioner Vaupel representing all captioned Petitioners and unknown Petitioners present and future, are in the custody of all Respondents being the United States Immigration and Customs Enforcement ("ICE") and the Park County Detention Center; All Petitioners are currently and temporarily detained at the Park County Detention Center (PCDC) under an Immigration Process. Though there are 26 ICE Detainees captioned in this Petition for Injunctive relief of **36** ICE Detainees presently Detained a the Park County Detention Center, Petitioner Vaupel categorically claims that generally at any one time there are usually upwards 40 to 50 Immigration Detainees housed in the Park County Detention Center and therefore as there is a minimal revolving quantity of Detainees that are

moved through the Park County Detention Center under an Immigration process, it has become necessary for this Petition for Injunctive Relief to be filed as a Class Action in order to protect the rights of those that can not be represented presently or in the future.

However at the point of filing this action, there are a total of 36 Immigration Detainees with the 26 captioned Detainees representing that percentage of those that can not be represented. Therefore the Petitioners are detained at PCDC, housing number: E-Pod; 1180 County Road 16, P/O Box 965, Fairplay, Colorado 80440. ICE has contracted with PCDC, a county detention center, to house immigration detainees such as the Petitioners. The Petitioners are under the direct control of the Respondents and their agents.

## III JURISDICTION

This Court has jurisdiction under 28 USC § 1331, which legislates that the District Courts SHALL have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

This Court has personal jurisdiction over the Defendants because the alleged incidents occurred within the confines of this Court. This Complaint arises from Administrative, statutory and Constitutional violations by the Defendants, to the Plaintiff's, prior too and constantly during the Plaintiffs detention in the Park County Detention Center, 1180 County Road 16, Fairplay, Colorado 80440, whom are a long term Contract ICE Detention facility.

Therefore as this Detention Center/Facility is in the State of Colorado, in the United States of America, original jurisdiction is conferred on this Court by 28 USC § 1331. The Court also has jurisdiction pursuant to Federal Rule of Civil Procedure Rule 23 (a) and (b), also under the Administrative Procedures Act (APA) where the Petitioner's challenge ICE Officers acts under *Ultra Vires* as violative of the APA and the equal protection guarantees of the Fifth Amendment of the United States Constitution.

7

## IV VENUE

The Venue is Governed by 28 USC § 1391(e) and pursuant to _Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 493-500 (1973)_, venue lies in the United States District Court for the District of Colorado, the judicial district in which all the Petitioners reside.

## V PARTIES

Petitioner Vaupel is a native and citizen of Australia and is seeking lawful permanent residency in the United States. The Petitioner was first taken into ICE custody on October 12, 2004, and has remained in ICE custody since that date.

Petitioners Igor Margatskiy, Gerald Nkwanga, Kwabena Essuman and Jose Zamorano were transferred to the Park County Detention Center from the ICE Processing Center on May 31, 2006.

Petitioners Jon Vaupel and Benad Abiodun were transferred to the Park County Detention Center from the ICE Processing Center on June 9, 2006.

Petitioner Francis Johnson was transferred to the Park County Detention Center from the ICE Processing Center on June 30, 2006.

Petitioners Mario Jean-Baptiste, Le Man, Hung Tran, Khalid Wahab, Tran Loi, Stanley Harmon, Reziki Temu, Roy Berko, Rovey Morm, Yemane Haile, Christopher Lukanga and Arben Kola were transferred to the Park County Detention Center from the ICE Processing Center on July 14, 2006.

Petitioner Khalid Agina was transferred to the Park County Detention Center from the ICE Processing Center on July 27, 2006.

Petitioner Francisco Banal-Martinez was transferred to the Park County Detention Center from the ICE Processing Center on July 5, 2006.

Petitioner Alfredo Farinas-Perez was transferred to the Park County Detention Center from the ICE Processing Center on August 16, 2006.

Petitioners Anerobi Ngwabe, Stewart O'Neil, Gerald Remi, Vakhom Xayamoungkhoun and Chinh Nguyen were transferred to the Park County Detention Center from the ICE Processing Center on September 11, 2006.

Petitioner Murphy Wamala was transferred to the Park County Detention Center from the ICE Processing Center on October 11, 2006.

Respondent Alberto Gonzales is the Attorney General of the United States and is responsible for the administration of ICE and the implementation and enforcement of the Immigration and Nationality Act (INA). As such, Mr. Gonzales has ultimate custodial authority over the Petitioners.

Respondent Michael Chertoff is the Secretary of the Department of Homeland Security. He is responsible for the administration of ICE and the implementation and enforcement of the INA. As such, Mr. Chertoff is the legal custodian of the Petitioners.

Respondent Douglas Maurer is the ICE Field Office Director of the Colorado Field Office of ICE and is the Petitioner's immediate custodian. See _Vasquez v. Reno_, 233 F.3d 688, 690 (1st Cir. 2000), cert. denied, 122 S. Ct. 43 (2001).

Respondent Fredrick Wegener is the Sheriff of Park County and therefore the "Warden" of the Park County Detention Center in Fairplay, Colorado, where the Petitioners are currently temporarily detained under the authority of ICE, and therefore alternatively may be considered as the Petitioners immediate physical custodian as at the time of filing.

Respondent Lt. Daniel Muldoon is the Park County Detention Center Chief Administrator and therefore is responsible for control and operations plus the day to day care of all ICE Detainees housed at the Park County Detention Center, furthermore Lt. Muldoon is the designated Officer in Charge and should be considered a Respondent as he is responsible for the implementation and application of the ICE Detention Standards within the facility.

# VI CLASS ACTION PREREQUISITES

## 1. The Four Requirements Needed to Satisfy Class Action Prerequisites

In order for the Petitioners to meet the prerequisites required for filing this Class Action Law Suit pursuant to the Fed. R. Civ. P. Rule 23(a) and (b), they are required to demonstrate the following:

(a) That there is sufficient number of class members or potential class members to warrant class treatment and that joinder of all the members is impractical. ("**Numerosity**");

(b) There are common questions of law or fact among class members ("**Commonality**");

(c) The named plaintiffs' claims and defenses are typical of the class ("**Typicality**"); and

(d) The named plaintiff's and their counsel can represent the interests of the class competently and with conflict ("**Adequacy**").

The first two requirements or Rule 23(a) concern the class and its claims with the latter two requirements relating to the named plaintiffs and class counsel.

## 2. Satisfaction of the Class Action Prerequisites

Now that the Class Action prerequisites have been determined, the Petitioners and Parties must establish that this Class Action meets all the requirements of this Class Action.

(1) "**Numerosity**": As the Petitioners make representations on behalf of all ICE Detainees, present and future, that are or will be housed at the Park County Detention Center, therefore the class is so numerous and unknown that joinder of all members is impracticable.

(2) "**Commonality**": As the Petitioners and those unrepresented are, and will be, housed at the Park County Detention Center are requesting a Preliminary Injunction seeking immediate relief from the below standard conditions and then eventually a Permanent Injunction to force change on behalf of all present and

future ICE Detainees that are or may be housed at the Park County Detention Center, the questions of law or fact are common throughout the class.

**(3) "Typicality":** Therefore as the claims of the Petitioners, being the representative parties on behalf of all the Petitioners present and future, are to remedy immediate harms caused, then eventually to force change on behalf of and for all ICE Detainees that are and my be housed at the Park County Detention Center, these claims are typical of the claims of the entire class.

**(4) "Adequacy":** As the Petitioners make these claims on behalf of all ICE Detainees housed at the Park County Detention Center, present and future, though very capable, the Named Parties have shown their intent to represent all the Petitioners fairly and adequately to protect the interests of the class competently and without conflict, however due to the continued incarceration of all the Petitioners and the complexity of Class Actions, their ability to be able represent and administratively manage a Class Action of this magnitude on behalf of all class members is restricted due to lack of resources and access to legal material therefore all captioned Petitioners are requesting that this Honorable Court appoint Class Counsel to represent all members of the class competently and without conflict.

## VII CLAIMS AND RELIEF SOUGHT

The Petitioners assert that there are numerous violations being committed by ICE Officials and the Park County Detention Center Administrators on a regular and repetitive basis therefore accordingly each of the issues will be address as follows:

## 1. DENIAL OF ACCESS TO LEGAL MATERIALS

ICE's Policy in their ICE Detention Standard with regard to Access to Legal Material states *"Facilities holding ICE detainees SHALL permit detainees to access a law library and provide legal materials, facilities, equipment and document copying privileges, and the opportunity to prepare legal documents"*.

The Detention Standard further states that this policy shall apply to all facilities holding ICE Detainees for more that 72 hours whom have a Detention Contract with the United States Immigration and Customs Enforcement. The named Petitioners have been detained at the Park County Detention Center since May 31, 2006, and have been informed by ICE that they will remain here until a conclusion is reached in their cases this being either release or removal. As the violations of the ICE Detention Standards are numerous the Petitioners will address each issue as listed in the Detention Standard.

## A. Law Library- General

The Detention Standard states *"The facility **SHALL** provide a law library in a designated room with sufficient space to facilitate detainees' legal research and writing. The law library **SHALL** be large enough to provide reasonable access to all detainees who request its use. It **SHALL** contain a sufficient number of tables and chairs in a well-lit room, reasonably isolated from noisy areas"*.

The Park County Detention Center "Law Library" is combined with the regular Library and constitutes an available work area of approximately 12 feet by 15 feet and contains one fold away trestle table with a single basic Dell Computer and printer and ONE CHAIR only, however there is a second trestle table that the ICE Detainees found and set up with a second chair which is shared with the Programs Room adjacent to the library and is often not available. This "Law Library" is adjoined to the Programs Room and has no door so consequently during programs and classes this area is only a few feet from the class podium and therefore is NOT isolated from noisy areas. **(See Exhibit A)**

In the case of *Shango v. Jurich, 965 F.2d 289, 291 (7ᵗʰ Cir.1992)*, the Court here determined that *"A Law Library which contains seats for 80 - 100 persons and contains nine single occupancy study cells for population of approximately 2,300 inmates is of adequate size"*.

Therefore using the same theory as the Court did in *Shango* and relating it to the present situation at the Park County Detention Center Law Library, considering the population of the Park County Detention Center ranges from anywhere between 200 – 230 detainees, it would be safe to say that a library containing tables and seating for 8 – 10 detainees at any one time, would be considered as adequate.

## B. Law Library Equipment Provided

The ICE Detention Standard states *"The Law Library **SHALL** provide an adequate number of typewriters and/or computers, writing implements, paper, and office supplies to enable detainees to prepare documents for legal proceedings. The facility **SHALL** designate an employee with responsibility to inspect the equipment weekly and ensure that it is in good working order and to stock sufficient supplies"*

Furthermore the Standard lists a minimum requirement of Equipment and Supplies which **SHALL** be available to all ICE detainees and consists of the following:

1. Typewriters with replacement ribbon and corrections tape. Computers may also be provided for detainee use.
2. Carbon Paper (unless a copier is available)
3. Writing Implements
4. Writing Tablets
5. Non-toxic Liquid Paper.

However, since this Standard was last updated on September 20, 2000, and the above 5 requirements are obviously somewhat now antiquated, the Petitioners will presume this to read as the following:

1. Sufficient number of Computers is to be provided complete with an adequate printer(s) and paper supplies for detainee use.
2. An adequate Photocopier must be available for detainee use.
3. Adequate writing pens, pencils, rulers are to be available for detainee use.
4. Writing Tablets.
5. Non-Toxic Liquid Paper or alternatively "White Out Tape".

As previously listed, the Park County Detention Center Law Library contains One Computer, One Printer, there is NO copier available, however to compensate

for this, the facility does offer a Photocopier Service through the Case Manager which requires a formal written request for copies (Kite), a wait period of up to 4 days to receive these copies and a charge of 10 cents per page.

The ONLY available writing implement is a BLACK 3 inch long "Flex Pen" which constitutes to nothing more than the "inside ink tube" of a regular pen with a thin rubber sleeve over the outside with a 50% failure rate and is extremely difficult to use even for basic writing and therefore CAN NOT be successfully used for any form substantial Legal writing.

Writing tablets are only available for purchase on commissary, and are not given out FREE to any detainee, therefore those who are indigent are either reliant on other detainees to purchase these items for them or they must manage without.

No form of White Out material is available, Detainees at the Park County Facility have requested such, but have been denied this request due to the possibilities of abuse, in response, detainees requested "White Out" roll on tape however this request was also rejected.

## C. Inadequate Law Library Holdings

The ICE Detention Standards requires that the Detention Facility in which the Detainees are being held *"SHALL contain the materials listed in Attachment A. ICE SHALL provide an initial set of Materials listed. The Facility SHALL post a list of its holdings in the Law Library"* (See Exhibits B1-5 Attachment A).

Since the Petitioners were transferred to the Park County Detention Center beginning May 31, 2006, there has been a constant administrative battle with ICE Officers and Park County Administrators regarding the lack of and virtually NON EXISTANCE of any usable Legal Materials in the Law Library, materials that are available to Immigration Detainees are insignificant and out of date (See Exhibit D4); the Petitioners have sent numerous Kites and Letters to ICE complaining of this problem to no avail. (See Exhibits C1-6) ICE at one time informed the

Detainees that they were attempting to purchase the materials listed in Attachment A **(See Exhibits B1-5)** but as explained by ICE Officer McInish during one of her weekly visits, as quoted *"This resource list is so outdated that allot of the books and materials on this list are NO longer available, so we are looking to replace them with more updated publications"* and that was the last we ever heard of this subject with future requests for this material being answered with a shrug of the shoulders and the comment *"I don't know what is happening"*.

This further inspired many Kites and Grievances to Park County **(See Exhibits C7-8)** and finally a "Letter of Intent to Sue" issued to the Park County Sheriff's Office on August 14, 2006, in the hope that this may inspire the Sheriff to take action against ICE to obtain these materials, however all this succeeded in doing, was to upset Lt. Muldoon (Park County Detention Center OIC) who threatened to take away our only computer and printer and replace it with a typewriter, should we pursue this action any further. **(See Exhibit D1-6)**

Finally, Petitioner Vaupel, while researching for another Federal National Class Action Suit to be filed against ICE in Washington D.C. (compelling ICE to update and expand their Standard for Law Libraries in all ICE Processing, Contract and Intergovernmental Facilities to that of the Federal Prison Regulations as claimed to be a mandatory requirement for ICE by the American Association of Law Libraries AALL) contacted Rebecca Tramell, Law Library Director of Stetson University in Florida (Also the Chairperson of the AALL Standing Committee for Law Libraries to Institutionalized Persons), who also contacted the ACLU Nation Prisons Project and ALL informed Petitioner Vaupel that even though ICE claim they meet the requirements of the American Correctional Association (ACA) Standard for Law Libraries, Rebecca Tramell categorically states that this requirement is incorrect and that all ICE facilities and any contracted or intergovernmental facilities are required to meet the Law Library minimum requirements of the Federal Prison Regulations, and therefore all facilities containing ICE detainees must provide the

minimum materials listed in Exhibits D5-6 **(See Exhibits D5-6)** hence, the purpose for the, soon to be filed separate class action in Washington D.C. demanding ICE upgrade their Law Library Standard.

Though the minimum law library requirements has been well established in the Supreme Court case of _Bounds v. Smith_, 430 U.S. 817 (1977), _Bounds_ did not identify precisely what is required, though there has been some variations, most courts have required that at a minimum, any detention facility law library, MUST include Federal and State statutes, Federal and State law reporters for the last 30 years plus a collection of essential secondary tools, including Shepard's Citations, basic treatises on criminal law, habeas Corpus and prisoners rights. _Johnson v. Moore_, 948 F.2d 517, 521 n2 (9th Cir. 1991) **(See Exhibits D5-6)** of course for immigration detainees this must further include the minimum required immigration law materials involving practice and procedures. **(See Exhibits B1-5)**

## D. ICE Counsel's Failure to Update Legal Materials

The ICE Detention Standard for upgrading and monitoring this listed requirement of materials as seen in Exhibits B1-5 "Attachment A" clearly states: _"The **INS** Office of General Counsel (OGC) will be asked to review the contents of Attachment A at least ANNUALLY, and update the list as needed. INS will add information on significant statutory and regulatory changes regarding detention and removal of aliens in a timely manner and provide initial copies to the facility"._

ICE are clearly in violation of this Standard as it can be plainly seen, by the first sentence of Attachment A, which states that "The information in Attachments A, **(Exhibit B1)** was last updated as of January 17, 1997, further evidenced by the fact that the "Standard" still refers to ICE as the INS and finally supported by the statement of ICE Officer Jessica McInish who informed all ICE Detainees that a majority of these Law Library Materials were no longer available from the publisher.

Furthermore the ICE Detention Standard further states:

*"The Facility **SHALL** designate an employee with responsibility for updating legal materials, inspecting them weekly, maintaining them in good condition, and replacing them promptly as needed. The Facility **SHALL** notify the designated contact person at INS Headquarters if anticipated updates are not received or subscriptions lapse. The Facility **SHALL** dispose of outdated supplements and other materials when it receives new materials".*

The Petitioners categorically claim that none of these required Standards have been met and that the only legal resources available to them as listed **(See Exhibit D4)** are outdated and insufficient and therefore are of no value whatsoever in assisting in any form of legal research therefore denying the Petitioners access to the Courts and therefore violating their Constitutional Due Process Rights.

## E. NON Replacement of Materials

The ICE Detention Standard states that: *"Damaged or stolen material **SHALL** be promptly replaced. In addition to its own inspections......The facility may obtain replacements by contacting the designated coordinator at INS Headquarters".*

The Petitioners categorically claim that as there was NO Law Materials supplied in the first place by ICE, there is NO Law Library materials to be inspected by the facility for either Damage or Loss, a gross violation in itself.

## F. Hours of Access

The ICE Detention Standard states that: *"The Facility **SHALL** devise a flexible schedule to permit all detainees, regardless of housing or classification, to use the Law Library on a regular basis. Each Detainee **SHALL** be permitted to use the Law Library a **MINIMUM** of 5 hours per week".*

The Petitioners categorically claim that upon their first arrival back in May of 2006, the ICE Detainees were permitted to use the Law Library between the hours of 6 PM and approximately 2 AM in the evenings 7 days a week, and that there

was no restriction on the number hours or the number of ICE Detainees who were permitted to use the Law Library during that period.

This arrangement between Park County Officer in Charge (OIC) Lt. Muldoon and ICE Detainees, worked well until the issue of No Legal Materials became such an issue, as previously discussed, that Petitioner Vaupel, as a last resort, filed a "Notice of Intent to Sue" Park County for the missing required legal materials in the hope that it would inspire some action by Administrators for the Park County Detention Center in pursuing these much needed materials from ICE.

This, however this was not the case, instead Lt. Muldoon contacted ICE Officers who Commanded Lt. Muldoon to restrict the number of hours that the Park County ICE Detainees were being permitted to use the Law Library to a MAXIMUM of 5 hours per week with NO EXCEPTIONS. These instructions by ICE then inspired OIC Lt. Muldoon to issue directives of his own restricting Law Library access for all ICE Detainees to allowing **ONLY ONE DETAINEE** to use the Library at a time and for only ONE HOUR per day for ONLY FIVE DAYS per week and NOTHING MORE and changed the times that ICE Detainees could access the Library to be between the hours of 8 PM and 4 AM excluding Sundays.

This new directive has now caused insurmountable problems, as you can imagine, with an average of 45 ICE Detainees housed at Park County, each now permitted a MAXIMUM instead of a minimum of 5 hours per week, which in some cases is not nearly enough to produce any meaningful legal work, therefore you now have problem of conservatively at least 15 of the 45 Detainees who are fighting their Immigration cases, who all need their minimum of 5 hours per week therefore, after doing the sums, at 8 hours per day by 6 days in the week, Park County is making available 48 per week of Law Library access, this would normally be reasonable access provided those 15 detainees could access the library together, but once you limit the use of the library to ONE detainee per hour, you now have a problem, 15 detainees by 5 hours equals 60 hours of required access

when only 45 hours are available, and this is based on access between 8 PM and 4 AM, which often does not occur due to unavailability of staff and is a very conservative estimate of only 15 out of 45 detainees wishing to access the law library which on numerous occasions has been higher, therefore, as you can see, this now limited access to the Park County Detention Center Law Library is clearly a violation of ICE Detainees Constitutional rights regarding access to the Courts.

Furthermore in the case of *Shango v. Jurich, 965 F2d 289, 291 (7th Cir. 1992)* noted that "*General population detainees can visit and FREELY use the library for 10 – 12 hours per week*" also in *Gluth v. Kangas, 773 F. Supp. 1309, 1307 (D Ariz. 1988), affd, 951 F.2d 1504 (9th Cir. 1991)* the court here sent a very clear message by stating "*general population inmates are entitles to a minimum of 10 hours of actual law library use each week*"

This rule of limiting ICE Detainees to ONLY 5 hours per week for use of the Law Library, has been held to be extremely unreasonable, see the Supreme Court decision of *McDonnell v. Wolff, 483, F.2d 1059 (8th Cir. 1973), affd, 418 U.S. 539 (1974)* stating state "*seven hours per week is not only unreasonable but also inadequate to research most legal claims*".

## G. Photocopying of Legal Documents

The ICE Detention Standard states: *"The Facility SHALL ensure that detainees can obtain photocopies of legal material, when such copies are reasonable and necessary for a legal proceeding involving the detainee. This may be accomplished by providing detainees with access to a copier or by making copies upon request".*

Park County Do NOT provide a photocopier for the ICE detainees to access to copy there legal documents, however when ICE Detainees first arrived at Park County in May of 2006, the Park County Deputies readily photocopied their legal documents upon request and at NO expense which of course was in line with the ICE Detention Standard.

However, as with the Law Library access, after Petitioner Vaupel filed a "Letter of Intent to Sue" to the Park County Sheriff on August 14, 2006, as a last resort effort in obtaining the required legal material, OIC Lt. Muldoon, like the law library access, issued another directive to all Officers of the Park County Detention Center, that all photocopying for the ICE detainees was to cease and subsequently initiated a plan where all requests for required photocopies for ICE Detainees MUST now be written on a Kite and forwarded to the Case Manager for approval and copying, though this process would appear on face value to be within the required Standard, this new process can take up to 4 days for a detainees to receive there copies and with Federal Court deadlines often being 10 days, this requirement often causes serious problems.

Furthermore the Standard mandates that these legal copies must be FREE of charge yet with these new initiated directives, all ICE Detainees MUST now pay 10 cents per copy, even those indigent detainees who do not have funds to cover such copies, this is achieved by placing a negative balance against the detainees inmate account so that should indigent detainees have funds deposited on their accounts, these funds will be garnished to cover these previous costs being a direct violation of the ICE Detention Standards where **ALL** Legal Copies for **ALL** ICE Detainees MUST be given **FREE** of Charge and upon request.

Petitioner Vaupel being indigent, recently received an receipt of DEBT for the legal envelopes and photocopies supplied to him plus the expense of sending out his legal mail, as Petitioner is indigent and representing himself, Park County Administrators are required to supply theses services FREE yet Petitioner Vaupel received a receipt of DEBT for $167.48 which, according to the Park County Detention Center handbook, will be sent to a "Collection Agency" if this debt is NOT paid in full before he leaves this facility. **(See Exhibit E).**

In _Harrington v. Holshouser, 741 F.2d 66 (4th Cir. 1984)_ the court orders that _"access to copy machines FREE of charge for inmates to copy cases **is required**"._

## H. <u>Envelopes and Stamps for Legal Documents</u>

The ICE Detention Standard clearly states: *"The Facility **WILL** provide indigent detainees with **FREE** envelopes and stamps for mail related to a legal matter, including correspondence to a legal representative, potential legal representative, or any court".*

However, at the Park County Detention Center, all ICE Detainees are required to pay for all their legal mail to be sent out, this even includes indigent detainees with NO funds in their inmate account. Like the Photocopies, if an ICE Detainee does not have funds in his inmate account, Park County will still send his Legal Mail but charge his inmate account with a negative balance so that in the event that the ICE Detainee is fortunate enough to have funds placed in his inmate account at a later day, these funds will be garnished being in direct violation of the ICE Detention Standards as indigent ICE Detainees MUST be given FREE Legal Mailing. As previously stated if this debt is NOT paid in full by the time the Detainee leaves the Park County Detention Center, the debt accumulated will be sent to a collection agency (**See Exhibit E**)

## I. <u>Notice to Detainees</u>

The ICE Detention Standard clearly states:

*"The Detainee handbook or equivalent **SHALL** provide detainees with the rules and procedures governing access to legal materials, including the following information:*

1. *that a law library is available for detainee use;*
2. *the scheduled hours of access to the law library;*
3. *the procedure for requesting access to the law library;*
4. *the procedure for requesting additional time in the law library (beyond the 10 hours per week MINIMUM)*
5. *the procedure for requesting legal reference materials not maintained in the law library; and*
6. *the procedure for notifying a designated employee that library material is missing or damaged.*

*These policies and procedures **SHALL** also be posted in the law library along with a list of the law libraries holdings".*

The Park County Detention Center does not produce or distribute a Detainee Handbook exclusively produced for ICE Detainees, while the Park County Detention Center does have a handbook relevant to Criminal Sector or their clientele, it does NOT include any relevant information to CIVIL ICE Detainees including the above Law Library information which of course would be necessary considering the specialized Law Library arrangement tailored by Park County especially for all ICE Detainees.

## J. Retaliation Prohibited

The ICE Detention Standards clearly state that: *"Detainees may not be subjected to reprisals, retaliation, or penalties because of a decision to seek judicial relief on ANY matter, including:*

1. *the legality of their confinement;*
2. *the legality of conditions or treatment while under detention;*
3. *an issue relating to their immigration proceedings; or*
4. *any allegation that the Government is denying rights protected by law".*

As previously claimed, after ICE would not produce the required legal materials for the Law Library, even after numerous requests and threats of legal action, Petitioner Vaupel, in an attempt to further inspire Park County Detention Center into pursuing ICE for the much needed Law Library Legal Material filed many Kites and Grievances to Park County and finally a "Letter of Intent to Sue" issued to the Park County Sheriff's Office on August 14, 2006, in the hope that this may inspire the Sheriff to take action against ICE to obtain these materials, however all this succeeded in doing, was to upset Lt. Muldoon (Park County Detention Center OIC Administrator) who then retaliated by threatening to take away our only computer and printer and replace it with a typewriter, plus he further initiated directives that minimized the use of the Law Library by the ICE Detainees and

further initiated directives ceasing all free photocopying by Park County Officers an implementing a photocopy system that is cumbersome and at considerable expense to all ICE Detainees. This is clearly an act of retaliation an in violation of the ICE Detention Standards.

Furthermore the Courts have made it quite clear that the states or counties MAY NOT harass or intimidate detainees for their law related activities. *Young v. Calhoun, 656 F. Supp. 970 (SDNY 1987)* they have found that this course of conduct violated a detainee's Constitutional rights. *Morrison v. Lefevre, 592 F. Supp. 1052 (SDNY 1984)*

## K. Law Library Relief Sought

All Petitioners respectfully request relief from this Court by Ordering the Respondents to adhere to all the Regulations of the ICE Detention Standards with the regards to the Park County Detention Center Law Library, these requests include but are not limited to the Court Order the following:

1. That the Law Library be designated enough room in which to place enough tables and chairs to facilitate ICE Detainees legal writing and research plus to install a door between the Law Library and the Programs Room to ensure that the Law Library area is isolated from the Noisy Programs Room.

2. That the Law Library be equipped with enough computers and research software along with an adequate supply of printer paper and toner cartridges on hand to enable the ICE Detainees to prepare Legal Documents and Court Proceedings, that an employee is designated to inspect the equipment and stock the necessary supplies weekly, and that the ICE Detainees are given adequate regular pens, writing tablets, white out materials, Staplers and staples to prepare legal documents and Court Proceedings.

3. That the required Legal Materials and Law Books as required by the ICE Office of General Counsel, be purchased by ICE and placed into the Law Library of the Park County Detention Center and that a list of these Legal Materials be updated and posted onto the wall of the Law Library.

4. That the ICE Office of General Counsel (OGC) be ordered to review the contents of Attachment A **(See Exhibits B1-5)** for its relevance and currency then add all information on significant statutory and regulatory requirements in a timely manner and then supplying this updated list to ICE with the

requirement that the updated products be supplied to the Park County Detention Center.

5. That once the Law Library is stocked with the up to date Law Materials, that the facility be ordered to regularly inspect and report damaged and stolen material to the ICE Headquarters for immediate replacement.

6. That ICE Detainees be permitted to access the Park County Detention Center Law Library **during waking hours**, on a regular basis, in reasonable groups of multiple people for AT LEAST a MINIMUM of 10 hours per week, and that additional time be granted **LIBERALLY** to ICE Detainees where extensive legal research and production of legal documents is required to meet case requirements and/or Court deadlines, when additional time is required, ICE Detainees requesting extra time, be permitted to use the Law Library in the evening hours as that are already currently in place at the Park County Center.

7. That the Park County Detention Center is required to install a photocopier in the Law Library and allow ICE Detainees easy access to that photocopier and replacement paper when required and that this service be free of any charge or alternatively, at the very minimum, that Detention Officers make the necessary ICE Detainee copies ON REQUEST without question.

8. That all legal and regular mail be sent out FREE OF CHARGE for all indigent ICE Detainees and that all envelopes and stamps required to send out this mail also be supplied free of charge.

9. That the Park County Detention Center revise their Detainee Handbook to include all special requirements with regards to ICE Detainees and the law library, produce and distribute this Park County ICE Detainee Handbook to all ICE Detainees upon admittance to the Detention Center.

10. That the Officers or Administration Personnel of either the Park County Detention Center or the Immigration and Customs Enforcement CAN NOT retaliate against the Petitioners of this action in any way, or for any other necessary action by Petitioners to ensure their rights are protected by Law.

## 2. Below ICE Standard Medical Care and NO Psychological Care

ICE's Policy in their ICE Detention Standard with regard to Medical Care states: *"Medical Facilities in contract detention facilities will maintain current accreditation by the National Commission on Correctional Health Care. Each medical facility will strive for accreditation with the Joint Commission on the Accreditation of Health Care Organizations".*

The Detention Standard further states that this policy shall apply to all facilities holding ICE Detainees for more that 72 hours whom have a Detention Contract with the United States Immigration and Customs Enforcement. The named Petitioners have been detained at the Park County Detention Center since May 31, 2006, and have been informed by ICE that they will remain here until a conclusion is reached in their cases this being either release or removal. As the violations of the ICE Detention Standards are numerous the Petitioners will address each issue as listed in the Detention Standard. Furthermore upon investigation, it has been discovered that the Park County Detention Center is **NOT** and has **NEVER** been accredited by the National Commission on Correctional Health Care as required.

## A. Medical Care – General

The ICE Detention Standard clearly states *"Every facility will provide its detainee population with initial medical screening, cost effective primary medical care, and emergency care. The Officer in Charge (OIC) will also arrange for **specialized** health care, MENTAL HEALTH CARE, and hospitalization within the local community. All facilities will employ, **at a minimum**, a medical staff large enough to perform basic exams and treatment for all detainees.......a health care specialist SHALL determine medical treatment, except when there is a disagreement on the type or extent of treatment that is necessary. IN SUCH CASES, ICE will make the determination, in consultation with the Chief of Medical Staff and in accordance with the medical policies of the United States Public Health Services' Division of Immigration Health Services".*

The Park County Detention Center does have a medical office and is manned by 3 part time medical staff but only 1 at a time and only limited to daylight hours 5 days a week. From many personal experiences of some ICE Detainees, (which will be address further in this complaint), there appears to be **NO** Specialized Care, there is **NO** Mental Health Care available at all, and hospitalization appears to be reserved for only those with obvious physical injuries e.g. broken bones and wounds.

## B. Medical Screening (New Arrivals)

The ICE Detention Standard states: *"All new arrivals **SHALL** receive initial medical and mental health screening immediately upon their arrival.....This screening **SHALL** include observation and interviews related to the detainees potential suicide risk and possible mental disabilities.......furthermore the Health Care provider of each facility **WILL** conduct a thorough health appraisal and physical examination on each detainee within 14 days of arrival at the facility.....All new arrivals **SHALL** receive TB screening by PPD (mantoux method) or chest x-ray......A detainee will be hospitalized only on the order of a physician.....all health appraisals with be performed according to **NCCHC** and JCAHO standards......**If a detainee requires emergency medical care, the officer will immediately take steps to contact a health care provider through established procedures**....Where the officer is unsure whether emergency care is required, the officer should immediately notify the on duty supervisor. If the on duty supervisor has any doubt whether emergency care is required, the on duty supervisor will immediately take steps to contact the health care provider, who will make the determination whether emergency care is required"*.

The Park County Detention Centers policy on medical screening is extremely basic, though the Medical Department does screen all detainees upon admission, this screening process is way below the required standard in that even though the basic medical questions have been asked, there is absolutely NO mental health screening what so ever, an important factor given the high percentage of ICE Detainees being held here at Park County, who **were** under the Psychological Care of Doctor LeDesma while at the ICE Aurora Detention Facility.

Furthermore there is **NO** TB screening at all, and though the Respondent's may argue that this procedure is not necessary due to the ICE Detainees being transferred from the ICE facility, ICE also uses the Petitioners Pod at Park County Detention Center to hold illegal aliens that are apprehended on route to someplace

26

in the United States from South of the Border. These ICE Detainees are often held at Park County for up to 14 days before being collected and taken to the ICE Facility in Aurora. The Problem is that Park County DOES NOT screen the "NEW ARRIVALS" for TB yet given their poor background and therefore their poor medical standard, it is highly possible that these detainees may be infected with TB and therefore Park County should be made to enforce the TB screening process on all ICE Detainees that are admitted to the Park County Detention Center.

Finally the processes should be strictly adhered too for determining the need for hospitalization of a potentially seriously ill detainee; instead, it appears that the standard response to a seriously ill detainees request for help is: *"Sorry you have to put in a kite to see the doctor on Thursday until then drink more water"*. Drink More Water being the medical solution to every ailment in the Park County Detention Center.

Petitioner Zamorano experienced this procedure first hand, after weeks of desperate cries for medical help and pleas to see the doctor who visits the facility for ONE hour on a Thursday; Petitioner Zamorano was NEVER seen by a doctor at Park County, and it was not until the day he was transferred back to the ICE facility in Aurora, that he was immediately rushed to Hospital and underwent Emergency Surgery for a ruptured Gall Bladder due to Gall Stones that had been blocking his bile duct for weeks before, and had gone unattended by the Park County Medical Staff even though Petitioner Zamorano had made numerous and desperate requests for help. **(See Zamorano Affidavit Exhibit F1-5)**

## C. Insufficient Dental Treatment

The ICE Detention Standard states: *"An initial dental screening SHALL be performed within 14 days of the detainee's arrival at this facility.......Detainees SHALL be afforded Emergency dental treatment directed toward the relief of pain, trauma and acute oral infection.......repair of prosthetic appliances to prevent detainee suffering......Routine dental treatment may be provided to detainees for*

*whom dental treatment is inaccessible for prolonged periods of detention over six months, this **SHALL** include amalgam and composite restorations, prophylaxis, root canals, extractions, x-rays, the repair and adjustment of prosthetic appliances and other procedures requires to maintain the detainees health".*

The Park County Detention Center does **NOT** perform any kind of Dental Screening and though emergency dental care has been provided, it is on a first come basis usually requiring long painful waiting periods and routine dental care for ICE Detainees is virtually non existent. For example Petitioner Vaupel has now been detained for over 2 years and has been detained by Park County Detention Center for 6 months yet after many requests for routine dental care, he is continually informed that his name is on the list, yet he and everyone else continue to wait but their turns never come around.**(See Exhibit G)** furthermore as of filing this complaint, Petitioner Vaupel still has NOT received any form of routine dental treatment.

Another such situation where **Emergency** Dental Treatment has been refused by the Park County Detention Center was recently when Petitioner Khalid Agina requested URGENT Dental Care and was refused due to the "Dentist retiring soon and not taking anyone else" Petitioner Agina was in so much agony he requested to pull the tooth himself, the Nurse not only allowed him to attempt this but also gave him tweezers and compound surgical scissors to do so, when it was evident that these instruments were not going to work, the nurse even offered to get him a pair of pliers from the MAINTENANCE department, NOT only is this UNETHICAL but also extremely UNHEALTHY and DANGEROUS. It was only after Petitioner Agina shattered his tooth with the pliers that the Administrators finally agreed to send him down the street to the dentist. **(See Agina Letter Exhibits H1-2)**

## D. Ineffective Sick Call

The ICE Detention Standard for Sick Call states: *"Each facility **WILL** have a mechanism that allows detainees the opportunity to request health care services*

*provided by a physician or other qualified medical officer in a clinic setting.....All facilities **MUST** have a procedure in place to ensure that all request slips are received in a timely manner.......Each facility **WILL** have regular scheduled times, known as sick call, **WHEN** medical personnel **WILL** be available to see detainees who have requested medical services. Sick call **WILL** be regularly scheduled in accordance with the following **MINIMUM** standards:*

1. *Facilities with fewer than 50 detainees – a minimum of 1 day per week*
2. *Facilities with 50 to 200 detainees – a minimum of 3 days per week*
3. *Facilities with over 200 detainees – a minimum of 5 days per week*

*The health care provider **WILL** review the request slips and determine when the detainee **WILL** be seen".*

As shown above, the ICE Standards for sick call are very specific, the Park County Detention Center has sick call only 1 day per week from a 10:00 am until Noon, though there is only *50 or fewer* ICE Detainees housed at the Park County Detention Center, there is an average total of approximately 220 to 230 Detainees overall housed in the Park County Detention Center in general, therefore given the number of total detainees that this detention medical facility needs to attend too, it must be assumed that Park County is required to offer a MINIMUM OF 5 DAYS per week of sick call instead of the 2 hour per week it is currently offering, furthermore as the doctor that comes to visit the Park County Detention Center can only be their for a maximum of 2 hours but often for only 1 hour, there is regularly more detainees requiring sick call than the doctor has time to see, therefore often detainees are notified that they are on the list to see the doctor yet when it comes time, the visit NEVER actually eventuates. Many such examples can be seen in the following evidence.

Often ICE Detainees submit Kites to see the doctor which are later returned with responses like "See nurse at med line" or "your name has been placed on the list" yet Detainees are never called to see the doctor. This is a common procedure

on a daily basis and has been experience by all ICE Detainees including Petitioners Vaupel and Essuman. **(See Exhibits I1-3)**, Petitioner Anerobi Ngwabe has had the same trouble, he has submitted numerous Kites to see the doctor but it appears he is being completely ignored after nearly a month. **(See Exhibit I4)**

Petitioner Alfredo Farinas-Perez has had a badly infected Big Toe and now foot since the beginning of September, he submitted a Kite on September 10, 2006, to see the Doctor regarding this issue **(See Exhibit J1),** Petitioner Farinas-Perez continued to submit medical kits and request to see a doctor at Med pass, finally when he still hadn't been seen by the doctor he filed a grievance with the Park County Administrators to try and have something done **(See Exhibit J2)** and then several days later filed the same grievance and a Kite of explanation to ICE Officer Alex Almeida who show **NO** interest, and informed Petitioner Farinas-Perez to see medical at Park County **(See Exhibit J3)**, incidentally the reason for sending this Kite and Grievance to Officer Almeida was because he was **NOT** getting any treatment from the Park County medical staff in the first place. When Petitioner Farinas-Perez still had NOT been attended to by Park County Medical he sent another Kite to ICE Officer Almeida for help on October 4, 2006, this kite still remains unanswered **(See Exhibit J4)**, finally after waiting a month he is finally taken to see the Doctor, for the last month his foot has caused him excruciating pain and is black in color, Petitioner Farinas-Perez showed his foot to the Doctor who told him that she could NOT remove his toe nail and treat the infection because the Park County Administrators **WILL NOT** pay her (the Doctor) to do it "because it is a small town" and that Petitioner Farinas-Perez would have to wait until he is release to the street to get treatment that he can pay for himself. Petitioner Farinas-Perez was understandably furious after waiting all that time and wrote another grievance to the Park County Administrators which still remains unanswered. **(See Exhibit J5)**

At a loss, Petitioner Farinas-Perez distressed sent another Kite to ICE Officers along with a copy of his grievance still with NO answer from either. **(See Exhibits J5-6)**

## E. 24 Hour Emergency Medical Treatment

The ICE Detention Standard clearly states: *"Each facility **WILL** have a written plan for the delivery of 24 hour emergency health care when no medical personnel are on duty at the facility, or when immediate outside medical attention is required".*   As shown in Petitioner Zamorano's case, **(See Exhibits F1-5),** how ill must an ICE Detainee become before he is considered to be ill enough to qualify "Emergency Medical Treatment"? The Park County Detention Centers medical department and the Administrators are indifferent to ICE Detainee medical needs.

## F. Inaccurate Delivery of Medication

The ICE Detention Standard for the delivery of medication clearly states: *"Distribution of medication **WILL** be according to the specific instructions and procedures established by the health care provider. Officers **WILL** keep written records of all medication given to Detainees"*

This Health Care Standard requires that the Park County Detention Center record an accurate written record of all medications administered to ICE Detainees, this means that, like in the ICE Detention Facility, the medications must be distributed by a qualified person and that an individual written account of each medication given to an ICE detainee, at a specific time, must be recorded as such so that a upon refusal and accurate record is kept of the Detainees health status at all times especially necessary when the Detainees is being medicated for psychological reasons.

At the Park County Detention Center, medications are NOT individually administered to the Detainees and immediately recorded in a log as required; instead some unknown individual pre packs a weeks worth of detainee's

medications into 7 mini envelopes accounting for each day of the week, these meds are then administered by the medical staff when they are on duty.

This system has presented a major problem, in that there is **NO** record of refused medications and during hours that the medical staff are not on duty, medications are administered by deputy sheriff's who have NO medical background, this would not normally be an issue, however, the unknown people who pack these medications for Detainee use, have on numerous occasions, either packed the incorrect medications or incorrect amounts or worse still, failed to pack some of the required medications at all, and during times when the medical staff are not on duty, the Park County Officers do NOT have access to correct these serious medication mistakes.

Therefore serious problems arise in that you have a number of ICE Detainees, some with extensive criminal backgrounds, running around in a pod with up to 50 other detainees, either incorrectly medicated or un-medicated at all, this combination surely must present serious security and safety issues for not only the ICE Detainees but all the Park County Detention Center Officers as well.

Petitioner Vaupel being the author is speaking from personal experience where incorrect or insufficient medications are administered to him on a regular basis, at the very minimum, at least once but normally twice a week, Petitioners Vaupel's medications are either in correct or non existent, complaints and requests for the Detention Standard to be adhered to have been met with inaction and at times indifferent if NOT resistant. **(See Exhibits K1-3)**

## G. No Medical Allowances for Special Needs

The Petitioners now address the issues of ONE main area of medical special needs. The ICE Detention Standard specifically states: *"The medical care provider for each facility **WILL** notify the Officer in Charge, in writing when a detainee has*

*been diagnosed as having a medical or PSYCHOLOGICAL condition requiring special attention"*.

The Park County Detention Center is not only required to meet the medical and dental needs of ICE Detainees but are also strictly required to establish and meet their psychological needs, however this issue is being completely avoided by the administrators of the Park County Detention Facility.

For example, Petitioner Vaupel recently conducted a survey of all the ICE Detainees housed at the Park County Detention Center and was surprised to discover that more that 50 per cent of all of these detainees, while back at the ICE Aurora Facility, were under the psychological care and supervision of the part time resident psychologist Dr. LeDesma and were medicate by the same.

The problem now is that the Park County Detention Center offers **NO** form of psychological monitoring or interaction as required by the ICE Standard, and though Petitioner Vaupel is not medically trained, it is only common sense that psychological medication should only be administered to detainees under the regular supervision of a trained Psychological Specialist, furthermore virtually all those detainees who were under the care of Dr. LeDesma were involved in weekly one on one contact sessions with her as a form of evaluation and counseling which of course **NO** longer exists.

Finally now these ICE Detainees being at the Park County Detention Center with absolutely **NO** regular psychological monitoring or counseling plus the added serious combination of incorrect or insufficient medication, combined with the obvious intentional isolation and lack of communication from their Immigration and Deportation Officers, further exacerbating the situation, is likely to be the major explanation behind the continuing and escalating unrest within the ICE Detainee Pod at the Park County Detention Center increasingly evidenced by escalating violence, verbal abuse, destruction of County property and rioting in

which a television, cable box and other items were destroyed, therefore endangering the lives of not only other ICE Detainees but also the Officers and staff of the Park County Sheriff's Department.

This deliberate indifference is even further demonstrated by the Park County Detention Center Administrator Lt. Daniel Muldoon. Eight ICE Detainee's, all on Psychological medication and clients of Dr. LeDesma from the GEO facility, submitted Kites to the Medical providers at the Park County Detention Center requesting psychological medical attention, obviously these Kites were then taken to Administrator Muldoon, who took it upon himself to deny these requests, returning each kite with a Park County Sheriff's Officer Inter-Office Memorandum **(See Exhibits L1-2)** It appears that Lt. Muldoon now considers himself qualified in the medical field by responding to these "MEDICAL KITES", the main problem with this responding memorandum **(See Exhibit L2)** is that it quotes ICE Detention Standard section III J and states:

> "In section III J it states '....the medical care provider for each facility will notify the Officer in Charge, using a Detainee special needs form (I-819), when a detainee has been diagnosed having a medical or psychological condition requiring special attention'. <u>This indicates that it is the responsibility of the medical provider for the Park County Jail to determine whether or not a psychiatric evaluation is necessary for a detainee or a special condition exists......Your request is Denied.</u>"

It still remains to be seen where the logic lies in this statement and hence Lt. Muldoon's denial of psychiatric care to ICE Detainees, after all, Petitioner Khalid Wahab along with the 7 other ICE Detainees listed at the top of Administrator Muldoon's memorandum **DID** submit these Kites to the "Medical Care Provider for the Park County Jail". It should have been up to the Medical Care Provider to determine whether psychiatric care was needed and if so, the Medical Care Provider **SHOULD HAVE** then submitted form I-819 to Administrator Muldoon,

it **SHOULD NOT** have Administrator Muldoon's decision as to whether Petitioner
Wahab or the others needed psychiatric care or **NOT**.

Another issue not being address by either Park County or ICE Officers is the
special needs for those who have been in detention for a long time. For example
the are several Petitioners who have been in detention for long period with eye
problems yet there seems to be a deliberate indifference as to their plights.

Again Petitioner Wahab is required to wear glasses in order to be able to read,
watch television and enjoy the things we see and take for granted everyday, after
his glasses became accidentally broken, he request Park County to repair them for
him after many weeks of **NO** cooperation he was finally told to send them back
down to the Medical department at the ICE Processing Center in Aurora, so as a
last resort that is what he has done, **NOW** he is being told by ICE officers that he
will be required to wait some months to have his glasses fixed. This kind of
treatment is just unacceptable, Petitioner Wahab must now wait for several months
before he can continue with anything, that includes reading, this of course includes
any work he was performing with regards to his Immigration Case, everything is
now on hold, therefore he is at the mercy of ICE officers, until his glasses are
returned. **(See Exhibits M1-2)**

Petitioner Christopher Lukanga has been pronounced legally blind with
cataracts which are progressively getting worse by the day. He also was inform by
Doctors at the ICE Processing Center, that he needs glasses IMMEDIATELY, but
shortly after this finding, he was transferred to the Park County Detention Center
where he is receiving NO medical help for this problem. Petitioner Lukanga's
problem is now so bad that he can no longer read, write or see what is happening
around him yet ICE and Park County seem to be indifferent to his sight problems
even though he has asked for medical help. **(See Exhibit N1-2)**

Finally this issue of Deliberate Indifference is blatantly obvious in an Affidavit of Virgle Dell Watson, a Park County Inmate and Trustee worker who read another Inter-Office Memorandum to all officers and Staff thanking them for the assistance in urgently removing another inmate from the Park County Detention Center to another facility for medical reasons. This Inmate, who remains unnamed, died shortly after being transported, however based on the statement of Virgle Watson it appears that Administrator Muldoon was unsympathetic to the unnamed inmates death by stating "We managed to dodge another bullet on that one" (**See Exhibit O**).

## H. <u>Failure to Transfer Medical Records</u>

Finally and most importantly with regards to the transfer of Detainee Medical Records the ICE Detention Standard is very specific when it states:

*"When a detainee is transferred to another facility, the detainee's medical records, or copies, **WILL** be transferred with the Detainee. These records should be placed in a sealed envelope or other container labeled with the detainee's name and A-number and marked '**MEDICAL CONFIDENTIAL**'"*.

This Detention Standard requirement is NOT practiced by either the ICE Aurora Facility or the Park County Detention Center. Petitioner Vaupel, upon his arrival to the Park County Detention Center on June 9, 2006, was medically screened during the intake process, but his ICE Medical Records were not available so therefore Petitioner Vaupel was required to explain in detail, the names of medication he was using, the purpose for that medication and the dosages of that medication, and even though after numerous requests over the past 4 months, ICE still has not made his medical records available to the Park County Facility.

The obviously serious issues with this practice, is that the Detainee may not remember the name, purpose or dosage, of his medication correctly and therefore leading to an incorrectly medicated detainee, or worse still the drastic addition and

abuse of medication by a knowledgeable criminal detainee with arterial motives during the Park County Intake process as the detainee is taken at his word regarding his medication and there is **NO** physical way for the Medical Staff of the Park County Detention Center to confirm such medication requests as the ICE Aurora Facility **DOES NOT** transport the detainees medical records with the detainee and the Park County Medical Staff can **NOT** confirm by phone due to privacy and security issues.

## I. <u>Medical Issues Relief Sought</u>

All Petitioners respectfully request relief from this Court by Ordering the Respondents to adhere to all the Regulations of the ICE Detention Standards with the regards to the Park County Detention Center Medical, these requests include but not limited to the Court Order the following:

1.  That the Park County Detention Center be required to attain accreditation from the NCCHC as required and that it upgrades its Medical Screening of ALL Detainees upon been admitted to the Center to include physical, mental emotional and TB testing and confirmation of required medication.

2.  That all ICE Detainees, upon admittance be given brief dental screening followed by a thorough dental examination by a qualified Dentist within the 14 days as required by the ICE Detention Standards and that if the detainee has been detained more than six months, the detainee be permitted to seek routine dental work as listed in the ICE Detention Standard in a timely manner.

3.  That the Park County Detention Center initiate Sick Call procedures in line with the ICE Detention Standard therefore requiring Park County to have a Doctor available for Sick Call at LEAST 3 days a week when the total Detainee population is under 200 detainees and in situations when the inmate population exceeds 200 detainees, that Doctor sick call be available 5 days a week instead of the 1-2 hours 1 day a week as presently available.

4.  That the Park County Detention Center be required to abide by the ICE Detention Standard regarding 24 hour emergency care and that all potential issues are dealt with in a speedy manner and that Park County make an ICE Detainees health and safety their primary issue instead of the cost.

5. That the Park County Detention Center adopt the ICE Detention Standard with regards to the distribution of medication to ICE Detainees and that Park County adopt the ICE Aurora Detention Facilities methods of medication distribution therefore preventing incorrect or insufficient medication.

6. That ICE Detainees be permitted access to Psychological and Emotional health care and supervision of psychological medication along with any necessary counseling that may be required. That if this Psychological Health Care Service can NOT be sufficiently and regularly supplied to any and all ICE Detainees who may require it, that ICE PROMPTLY removes the detainee and places him back into the physical custody and care of the ICE Aurora Detention Facility where all the necessary treatment can be sought.

7. That the ICE Aurora Detention Facility be required to reproduce, confidentially package and transferred all ICE Detainee Medical Records regarding regular medical, medication, dental and psychological records for all detainees that were housed at the ICE Aurora Facility and are transferred to the Park County Detention Center and that once all ICE Detainee Medical records have arrived at Park County, that Park County Detention Center Medical Department individually interview re-screen each ICE detainee to re-determine any medical, medication, dental and psychological issues that may now be prevalent upon study of those records.

## 3. <u>Non Conformity Regarding Telephone Access</u>

The ICE Detention Standard with regard to Telephone Access clearly states:

*"Facilities holding ICE detainees **SHALL** permit detainees to reasonable and equitable access to telephones".*

The Detention Standard further states that this policy shall apply to all facilities holding ICE Detainees for more that 72 hours whom have a Detention Contract with the United States Immigration and Customs Enforcement. The named Petitioners have been detained at the Park County Detention Center since May 31, 2006, and have been informed by ICE that they will remain here until a conclusion is reached in their cases this being either release or removal. As the violations of the ICE Detention Standards are numerous the Petitioners will address each issue as listed in the Detention Standard.

## A. <u>Denial of Reasonable and Equitable Telephone Access</u>

This ICE Detention Standard clearly states: *"The facility **SHALL** provide detainees with **reasonable and equitable access** to telephones during established facility waking hours, limited only by the restrictions below".*

This Standard is very specific in its requirement, being that the Park County Detention Center is required to provide all ICE Detainees with adequate telephone access that is **reasonable and equitable**, reasonable and equitable being the operative words here, firstly "reasonable" by the American Heritage Dictionary interpretation at 3, states "<u>Not Excessive or Extreme</u>" and "equitable" by the same American Heritage Dictionary interpretation states "<u>Just and Fair; Impartial</u>".

The ICE Detention Facility in Aurora, Colorado offers all ICE Detainees "Reasonable and Equitable" Telephone access by allowing ICE Detainees to purchase Pre Paid Phone Cards at a reasonable rate for usage of a just and fair period of time. The Detainee phone system at the ICE Aurora Detention Facility is owned and operated under contract to ICE, by Evercom Communications. Detainees at this facility can purchase Pre Paid Phone Card daily in $5, $10 and $20 limits from which an ICE Detainee is able to make multiple phone calls at a charging rate of <u>80 cents per 30 minute</u> phone call anywhere in Colorado; however this rate changes for long distance and international calls, long distance charges increase dramatically to <u>65 cents per minute</u> for all calls outside Colorado but within the United States, and increase to <u>85 cents per minute</u> for all international calls to anywhere in the world, though these long distance and international calls are somewhat extreme in rate and duration and need to be addressed as to what is reasonable and equitable, it is still a far cry from the outrageous telephone rates that ICE Detainees at the Park County Detention Center are being required to pay.

Park County Detention Center like the ICE Detention Facility in Aurora, also incorporates a telephone system owned and operated under contract with Park

County, by Evercom Communications, and too, like the ICE Facility, allow the ICE Detainees to purchase Pre Paid Phone Cards daily in the amounts of $5, $10 and $20 however this is where the similarities end.

The Park County Detention Center/Evercom Communications Phone System allows ICE Detainees to make phone calls within Colorado and Long Distance anywhere within the United States plus finally International Calls anywhere within the world, however cost rates per minute and the available talk time are considerably different. The Park County Evercom deal not only charges 50 cents per minute for LOCAL CALLS but also charges ICE Detainees a "Connection Fee" of $1 every time a detainee makes **or attempts to make** a local phone call, this connection fee is still charged against the Detainees Phone Card even if the Call is not accepted by the party receiving it effectively meaning that ICE Detainees in Park County can only talk locally to family etc. for a maximum of 8 minutes on a $5 phone card, a maximum of 18 minutes on a $10 phone card and finally a maximum of 38 minutes on a $20 phone card, that is of course that the Detainees phone call is even accepted, if not then of course the talk times for the next accepted call drop dramatically because of the Connection Fee for an unaccepted Call, plus finally the fact that Detainee phone calls in Park County are limited to only 15 minutes per call unlike that ICE Detention Facility which limits calls to 30 minutes therefore ICE Detainees here in Park County who can afford the $10 and $20 phone cards are being disadvantaged a second time because they can NOT talk for the total amount of talk time available on the card and are required to dial again which consequently in turn subtracts another $1 connection fee from the Phone Card. Evidence of these procedures and costs is clear explained in detail in the Park County Detention Center handbook  **(See Exhibit P)**

Doing the sums on these equations therefore demonstrates the futility of purchasing a $10 card because the actual usable talk time in a dollar value, given

the 15 minute time restriction, is only $7.50 with the possibility of a second call of only ONE minute, (pointless by any standard), taking into account the TWO $1 Connections Fees subtracted by making these calls.

Comparing these 2 pricing plans for Pre Paid Phone Cards sold to ICE Detainees BY THE SAME PHONE COMPANY, in different locations, it CAN NOT be determined that the ICE Detainees at the Park County Detention Center are being treated "Reasonably or Equitably" given an ICE Detainees Excessive and Extreme Cost of making phone calls at Park County therefore creating an Unjust, Unfair and NON IMPARTIAL phone system and hence Discrimination against all ICE Detainees that are required to be housed at the Park County Detention Center and in violation of the Equal Protection laws of the fourteenth Amendment.

Petitioner Murphy Wamala has had a first hand experience with the outrageous cost of using the Park County Pre Paid Phone Cards for his international calls to his family in Sweden. In the ICE/GEO Detention facility in Aurora, due to the fact the ICE Detainees are Civil Detainee's, are statutorily permitted to receive local and national messages and are permitted to take international calls from family living overseas. This requirement is extremely important for those who are not represented by counsel, like Petitioner Wamala and Vaupel who are therefore dependant on their family to assist them in their cases.

Unlike Petitioner Vaupel who is completely indigent and therefore has NOT been able to stay in contact with his family in Australia, Petitioner Wamala is in a situation where he can purchase Pre Paid Phone Cards, however these phone cards are outrageously expensive to make calls, for example, a $10 phone card will only allow Petitioner Wamala to talk to his family for 7 minutes a far cry from the 5 -10 cents per minute his family would only have to pay in Sweden to call HIM at the ICE Detention Facility. Petitioner Wamala has spent untold amounts of money with the Park County Center just to speak with his family. **(See Exhibit Q1-2)**

Petitioner Vaupel is also extremely dependant upon his family in Australia, to assist him, with NOT only his immigration case but also with his person affairs here in the United States and back in Australia, therefore Petitioner Vaupel's family would contact him at the GEO/ICE Detention Facility weekly or more if needed. Petitioner Vaupel was informed upon his transfer that this situation would NOT change however since arriving at the Park County Detention Center in June of 2006, though his family have attempted to contact him many times at the Park County Center, officers of this center will not allow Petitioner Vaupel to speak to them or even pass on any messages to Petitioner Vaupel that they even called, being another ICE Detention Standard violation, furthermore since Petitioner Vaupel was transferred to the Park County Detention Center, he been isolated from the much needed contact with his family members.

## B. <u>Failure of Park County to Permit Direct and Free Calls</u>

The ICE Detention Standard has a very specific policy regarding Direct and Free Calls for ALL facilities/Centers housing ICE Detainees, it clearly states: *"**Even** if the telephone service is generally limited to collect calls, the facility* ***SHALL*** *permit the detainees to make **<u>DIRECT CALLS</u>**:*

1. *To the Local Immigration Court and the Board of Immigration Appeals;*
2. *To the Federal and State Courts where the detainee is or may become involved in a legal proceeding;*
3. *To **<u>ALL</u>** Consular Officials;*
4. *To Legal Service providers, in pursuit of legal representation **or** to engage in consultation concerning his/her expedited removal case;*
5. *To a Government Office, to obtain documents relevant to his/her Immigration Case;*
6. *In an personal or family emergency, or when the detainee can otherwise demonstrate a compelling need **(to be interpreted <u>LIBERALLY</u>)***

*If the limitations of its existing phone system will initially preclude the facility from meeting these requirements, the Officer in Charge **MUST** report this to ICE.*

*ICE WILL respond by providing some means of access, e.g. cell phones into which facility staff can pre-program authorized numbers (in the above categories) with all other numbers blocked. These phones WILL be maintained by on-site liaison Officers or local officials, and MUST be provided in an environment that meets privacy standards.*

*Staff WILL allow detainees to make such calls as soon as possible after the request, factoring in the urgency expressed by the detainee……Incidents of delays extending beyond eight (waking) hours MUST be documented and reported to ICE……The facility SHALL NOT required detainees to pay for the types of calls listed above if they are local calls NOR for non-local calls if there is a compelling need. The facility SHALL enable all detainees to make calls to the ICE-provided list of free legal service providers and consulates at NO CHARGE to the detainee OR the receiving party".*

All ICE Detainees at the Park County Detention Center have been, and still is, in a constant battle with the Administrators of Park County, over the lack of telephone access to the Courts, Consular Officials, Government Offices, Attorneys, Legal Service Providers and Family members in emergencies, an "ICE Detainee Standard" requirement, through the use of the available telephones in the Detainees housing unit (Pod).

This lack of telephone accessibility is perhaps one of the MOST problematic issues faced by ICE Detainees housed at the Park County Detention Center, as a majority of these Detainees are being "Stored" here, due to their lengthy ongoing cases in which a majority are unrepresented by Counsel and are therefore defending/representing themselves due to the Constitutionally UNSUPPORTED requirement that all litigants in civil cases be NOT entitled to representation by the State in matters of this nature, however Petitioner Vaupel asserts that this lack of telephone accessibility to the Courts and other Government and Immigration

Departments is a major violation of ones Constitutional Right to Access to the Courts as guaranteed by the Fifth Amendment.

The ICE Detention Standard specifically states that the Park County Detention Center is REQUIRED to make all calls, from the collect phones in the ICE Detainee housing unit, to the Immigration Courts, the Federal Courts, Consular Officials, Legal Service Providers, Attorneys, Government Offices and Family with a compelling reasons, NOT only FREE but also DIRECT, neither of which are available together for any of the calls listed above.

Even though Park County has made SOME Consular Calls Free and Unmonitored, these calls still are NOT DIRECT calls meaning that the receiving party is still required to go through processes in order to accept the call, an obvious disadvantage to the Detainee attempting to make the call particularly if the receiving party is unaccustomed to receiving calls from an institution as the message played to the receiving party can often be mistaken for a collect call which will NOT be accepted by most Consulates and all Courts and Government Agencies.

The Evercom Phone system installed in the Park County Detention Center has the capabilities of allowing DIRECT calls but Administrators, for what ever reason, will not make these calls direct even after numerous complaints and grievances to the Park County Administrators and ICE Officers. Furthermore many of the Consular phone numbers listed on the notice board, in the housing unit, as being free calls are still block to calls from the Park County Detention Center. Park County Administrators have often used the excuse that these calls are being blocked by the Consulate Offices themselves, but those detainees that have been transferred from the ICE Aurora Facility, know this to be incorrect due to the fact that these calls are FREE and DIRECT from the ICE Aurora facility and therefore the Consulates themselves could NOT be the problem.

Petitioner Wahab has attempted numerous times to have the Park County Administrators make his calls to the Iraqi Embassy FREE and Direct but every time he attempts to call them this call is blocked even thought officers have informed him that this call is unblocked and that if it is blocked it is by the Iraq Embassy yet they can be called easily from the ICE Processing Center therefore indicating that the problem must be from the Park County end. Petitioner Wahab has also requested to make these calls from regular phone but these requests were denied by the Administrators. **(See Exhibits R1-2)**

Furthermore, apart from the Consular calls, Park County Administrators will NOT allow any of the other required Courts, Government Departments, Legal Service Providers, Attorneys etc. to be entered into the Phone System as Free Direct calls even after many complaints from the Petitioners including copies of the ICE Detention Standard requiring them to do so, being extensively provided to them. Therefore this act of defiance by the Park County Detention Center CAN ONLY be taken as a deliberate act to deny ICE Detainees there Constitutional right to Access to the Courts.

Petitioner Vaupel has attempted many times to have Attorney's, the Local Federal Courts, Legal Service Providers, and other Government department's phone numbers placed on the Free Direct Call list as required by the ICE Detention Standard yet to this day, all his requests have been refused other than calls to his Consulate have been made FREE but not Direct. **(See Exhibit R3)**

## C. NON Standard Telephone Usage Restrictions

The ICE Detention Standard for Telephone usage restrictions clearly states: *"The Facility **SHALL** not restrict the number of calls a detainee places to his/her legal representatives, **NOR LIMIT** the duration of such calls by rule or automatic cutoff......If time limits are necessary for such calls, they **SHALL** be **NO** shorter*

than *20 MINUTES*, and the detainee **SHALL** be allowed to continue the call if desired, at the first available opportunity".

Though the fact that the Detainee phone call duration, at the Park County Detention Center is limited to 15 minutes, is only a minor issue, **(See Exhibit P)** If ICE Detainee phone calls were limited to 20 minutes each as required by the ICE Detention Standard then it would make the ICE Detainee purchase of a $10 Pre Paid Phone Card a less costly and less futile exercise as they would be able to take full advantage of that $10 phone card instead of just $7.50 of that $10 as addressed above.

## D. Denial of Incoming Calls

The ICE Detention Standard regarding incoming phone calls clearly states: *"The facility **SHALL** take and deliver telephone messages to detainees as promptly as possible. When facility staff receives an emergency telephone call for a detainee, the caller's name and telephone number **WILL** be obtained and given to the detainee as soon as possible. The detainee **SHALL** then be permitted to return the emergency call as soon as reasonably possible within the constraints of security and safety. The facility **SHALL** enable indigent detainees to make a **FREE** return emergency call".*

As this ICE Detention Standard is quite self explanatory, little clarification is needed, ICE Detainees grievances with the Park County Detention Center on this issue is that the Park County Administrators categorically refuse to abide by any part of this regulation in that the Officer in Charge has made it very clear that his officers and staff WILL NOT take any messages for ICE Detainees **(See Exhibit P)**, they WILL NOT allow any Urgent Family Calls to be taken by ICE Detainees unless the family attempting to call the detainee passes a rigorous and personal cross examination inevitably ending up with the call not being connected and finally the Officer in Charge absolutely refuses to allow any

personal calls to be made from the Park County Detention Center NO matter the reason, therefore on this issue, Park County Detention Center blatantly disregards this mandatory Detention Standard and in doing so, the Detainee's rights for such messages and phone calls.

## E. Unacceptable Telephone Restrictions for those in Special Management Unit

The ICE Detention Standard regarding telephone restrictions for those ICE Detainees who are being either disciplinary or administratively segregated states:

*"Staff **SHALL** permit detainees in the Special Management Unit for disciplinary reasons to make **DIRECT** and/or **FREE** calls as described above, except under compelling security conditions. These conditions **SHALL** be documented ….…..Staff **SHALL** permit detainees in the Special Management Unit for other than disciplinary reasons (e.g. protective custody, suicide risk) to have telephone access similar to detainee's in the general population, but in a manner consistent with the security and safety requirements of detainees in these units".*

ICE Detainees who are segregated in the "Special Housing Units" for either disciplinary or administrative purposes at the Park County Detention Center, generally are NOT permitted to use the telephone until it is their "Hour OUT" which ranges from any time between Midnight and 4 AM in the morning, absolutely pointless if the Detainee is wanting to make a legal call.

Petitioner Vaupel learned of this policy by a first hand experience, when he was segregated for one week, and was unable to call his Consulate or make any legal calls during business hours for that week, unlike the segregation unit at the ICE Aurora Facility, Park County do NOT have any portable telephones on extension cords able to reach all of the segregation units therefore if and ICE Detainee in a Park County Segregation Unit must wait for his hour out to make calls which is absolutely pointless when it is 2 am in the morning.

# F. NO Privacy for Telephone Calls on Legal Matters

The ICE Standard for Telephone Calls on Legal Matter is very specific in its construction and designation and therefore leaves no doubt as to its intention:

*"The facility **SHALL ENSURE** privacy for detainees' telephone calls regarding legal matters. For this purpose, the facility **SHALL** provide **a reasonable number of telephones** on which detainees can make such calls **without** being overheard by officers, other staff or other detainees. The Facility staff **SHALL NOT** electronically monitor detainee telephone calls on their legal matters, absent a **COURT ORDER**.*

*The Facility **SHALL** inform detainees to contact an officer if they have difficulty making a confidential call relating to a legal proceeding. If notified of such a difficulty, the officer **SHALL** take measures to ensure that the call can be made confidentially.*

*Privacy may be provided in a number of ways, including:*

1. *By installing telephones with privacy panels (side partitions) that extend at least 18 inches to prevent conversations from being overheard.*
2. *By placing telephones where conversations may not be readily overheard by other detainees or facility staff; or*
3. *By allowing detainees to use an office telephone to make confidential calls regarding their legal proceedings".*

Of all the telephone issues that the ICE Detainees must deal with at the Park County Detention Center, this issue regarding accessibility and privacy of legal calls is perhaps the greatest issue aside from the difficulty of contact with families.

The Park County Detention Center on rare occasions, does allow ICE Detainees to accept legal calls, this is of course depending on the officer in charge at the time, however ICE Detainees MUST accept these legal calls from the officers desk at the Celli port of the Park County Detention Center in view of all other detainees plus

detainees are required to discuss there legal issues in front of the Duty Officer in the Celli port as Detainees are not permitted to be alone in this <u>restricted area</u>, therefore the detention officers are generally able to listen to all conversation that take place in these legal calls.

However on the over end of the scale, the Park County Detention Center DOES NOT offer ICE Detainees any means of being able to make legal calls privately. Even though on rare occasions Park County Officers will allow ICE Detainees to accept legal calls, they are only permitted to make any calls legal or personal, from the Collect Call phones in each of the pods.

The electronic phone system installed at Park County has the technology to enable FREE DIRECT calls all Courts, Attorneys etc. but chooses not to allow ICE Detainees that access even though the ICE Standard requires it and ICE Detainees have numerously requested it. **(See Exhibits R3)**

Petitioner Vaupel has made numerous written and verbal requests to have the Federal District Court, the Tenth Circuit Court of Appeals, the Jefferson County Family Court, and various legal representatives and Attorneys added to the FREE DIRECT call list as he represents himself in a number of civil issues as he is indigent and unable to purchase Pre Paid Calling cards, However Administrators at the Park County Detention Center have made it quite clear that they will ONLY allow FREE **NON** DIRECT calls to Embassies and Consulates **(See Exhibits R3)**, apart from these, all other calls must be made through the Collect Call MONITORED Phones therefore in violation of the ICE Detention Standards.

Furthermore as these calls MUST be made from with in the housing unit on the collect call phone, besides all these calls being monitored by the facility, these calls can also be overheard by any and all ICE Detainees as there is NO Security Shields around these phones within this pod and as if this was not difficult enough, these phones are not in a private place and therefore, on most occasions, when an ICE

Detainee is attempting to make a legal call, he must contend with 45 other detainees in the same area, yelling at each other, playing games and watching the television at full volume, which makes for a very difficult time even trying to understand the person on the other end of the phone, therefore just to be able to attempt to hear the legal person on the other end, the detainee must hold the phone in one hand pressing firmly against his ear and with the other hand covering the ear not being used, making it virtually impossible for the Detainee to take notes or write down pertinent information relevant to his case, this difficulty of taking notes is even further exacerbated by the fact the phone hand pieces only have very short cords and that there is NO shelf or table below the phones with which to write on so it is common amongst Detainees to have another detainee bending over so that the detainee on the phone, can use the others back as a writing table which further creates privacy issues.

## G. <u>Unlawful Monitoring of Detainee Telephone Calls</u>

The ICE Detention Standard regarding monitoring of detainee phone calls states: *"The Facility **SHALL** have a written policy on the monitoring of detainee telephone calls. If telephone calls are monitored, the facility **SHALL** notify detainees in the detainee handbook or equivalent provided upon admission. It **SHALL** also place a notice at each monitored telephone stating:*

*1. That detainee calls are subject to monitoring; and*

*2. The procedures for obtaining an unmonitored call to a Court, legal representative, or for the purpose of obtaining legal representation.*

*A detainee's call to a Court, a legal representative, or for the purposes of obtaining legal representation **WILL NOT** be aurally monitored absent a Court Order".*

The Park County Detention Center DOES NOT have any written policy with regards to the monitoring of Detainee phone calls, Park County DO NOT post any

signs in any of the housing units to warn a detainee that their calls will be monitored and finally the Park County Detention Center Handbook DOES NOT mention in any way, any policies regarding Detainee call monitoring NOR does the handbook list any procedure for detainees to make **private unmonitored** legal calls simply because Park County Administrators DO NOT allow ICE Detainees this privilege as clearly seen in their Detainee handbook. **(See Exhibit P)**

## H. Telephone Access Relief Sought

All Petitioners respectfully request relief from this Court by Ordering the Respondents to adhere to all the Regulations of the ICE Detention Standards with the regards to the Park County Detention Center ICE Detainee Telephone Access, these requests include but are not limited to, the Court Order the following:

1. That the Park County Detention Center modifies its Telephone System so that the ICE Detainees are being treated equally financially as those ICE Detainees at the Aurora facility and since both facilities use the same phone company, this should not be to much of a problem, also since ICE has chosen to place us way up in the mountains, that any calls from the Park County Facility to anywhere in Colorado will be only charged at local rates.

2. That Park County Administrators be ordered to modify their Telephone System so that all calls to: **(1)** To the Local Immigration Courts and the Board of Immigration Appeals; **(2)** To the Federal and State Courts where the detainee is or may become involved in a legal proceeding; **(3)** To **ALL** Consular Officials; **(4)** To all Legal Service providers including international organizations such as the United Nations etc. where a detainee is in pursuit of legal representation or to engage in consultation concerning his/her expedited removal case; **(5)** To any Government Office, to obtain any documents relevant to his/her Immigration Case; and **(6)** In an personal or family emergency, or when the detainee can otherwise demonstrate a compelling need **(to be interpreted LIBERALLY)**, that these calls can be made as a **DIRECT** and **FREE** Call without any monitoring by Park County, its Officers or any other ICE Detainees.

3. That the Park County Detention Center removes the 15 minute time limit permitted for all calls and substitutes it for a 20 minute time limit as required by the ICE Detention Standards.

4. That the Park County Detention Center be required to accept all phone messages for any ICE Detainees and deliver those messages as promptly as possible; that ALL family emergency calls be placed immediately through to the ICE Detainee, however should it not be possible at the time for the ICE Detainee to take that Emergency call, that messages be taken and that indigent ICE Detainees be permitted to call his family members back as soon as possible and at the expense of the Park County Detention Center.

5. That the Park County Detention Center install a portable phone system in the disciplinary and administrative segregation units so that an ICE Detainee has the same access to the telephones as that of the general population, this could be done by adapting a similar extension cord phone setup as that of the ICE Aurora Detention Facility.

6. That ICE and the Park County Detention Center working jointly, be required to install a sufficient number of telephone in a private area so that ICE Detainees may make legal calls that are not monitored either electrically or aurally by either Officers or detainees and that these phones be placed in a readily accessible area away from any noisy areas therefore allowing ICE Detainees to conduct legal calls without interruption or background noise.

7. That the Park County Detention Center be required to post the Detention Centers written policy regarding the monitoring of ICE Detainees phone calls, above each phone, as required by the ICE Detention Standard and that the Park County Administrators publish and distribute a Park County Detention Center ICE Detainee handbook that outlines their policy with regard to the monitoring of ICE Detainee phone calls plus the procedures for obtaining an unmonitored call to a Court, legal representative, or for the purpose of obtaining legal representation.

## 4. <u>Violations of ICE Standards for Correspondence and Other Mail</u>

The ICE Detention Standard with regard to Correspondence and Other Mail for ICE Detainees in Contract Facility clearly states:

*"ALL Facilities WILL ensure that detainees send and receive correspondence in a timely manner.......Each facility WILL widely distribute its guidelines concerning correspondence and other mail".*

The Detention Standard further states that this policy shall apply to all facilities holding ICE Detainees for more that 72 hours whom have a Detention Contract

with the United States Immigration and Customs Enforcement. The named Petitioners have been detained at the Park County Detention Center since May 31, 2006, and have been informed by ICE that they will remain here until a conclusion is reached in their cases this being either release or removal. As the violations of the ICE Detention Standards are numerous the Petitioners will address each issue as listed in the Detention Standard.

## A. <u>Failure to Provide Adequate Detainee Notification</u>

The ICE Detention Standard regarding the minimum notification for ICE Detainees by the Park County Detention Center, with regard to sending and receiving Correspondence and Other Mail is very specific:

*"The facility **SHALL** notify detainees of its policy on correspondence and other mail through the detainee handbook or equivalent provided to each detainee upon admittance. At a **MINIMUM**, the notification **SHALL** specify:*

1. *That the detainee may receive mail, the mailing address of the facility and instructions on how envelopes should be addressed;*

2. *That a detainee may send mail, the procedure for sending mail and instructions on how outgoing mail must be addressed;*

3. *That general correspondence and other mail addressed to detainees **SHALL** be opened and inspected in the detainee's presence.......*

4. *That special correspondence **SHALL** only be opened in the detainees presence, and my be inspected for contraband, but **NOT** read;*

5. *The definition of special correspondence, including instructions on the proper labeling for special correspondence.......*

6. *That packages may not be sent or received without advance arrangements approved by the Officer in Charge and provide the procedure for such;*

7. *A description of mail which may be rejected by the facility and which the detainee will not be permitted to keep in his/her possession.......*

53

8. *How to obtain writing implements, paper, and envelopes; and*

9. *The procedure for purchasing postage (if any), and the rules for providing indigent and certain other detainees free postage".*

Thought the Park County Detention Center establishes a majority of these requirements which are published in their handbook however several requirements are not listed or need to be altered and then published in the Park County ICE Detainee handbook, the only changes that MUST be made are as follows:

1. The Park County Detention Center basic handbook does not meet requirement 1 in that it does not publish the address and mailing instructions of the facility for ICE Detainees to pass onto their families.

2. The Park County handbook states that officers of the Park County Detention Center are permitted to open general correspondence and other mail WITHOUT the presence of the ICE Detainee which of course is a violation of the ICE Detention Standards.

3. The Park County handbook does NOT publish the Park County Detention Centers procedure for notifying an ICE Detainees of any rejected mail or mail returned to sender as will be discussed further down.

4. The Park County handbook does not list any procedure for obtaining writing implements , paper and envelopes because Park County Administrators require ICE Detainees to purchase all paper and envelopes when in actual fact they are required to supply these materials FREE of charge to all ICE Detainees.

5. The Park County handbook does NOT, list under the Mail heading any procedure for purchasing postage and the rules for providing indigent and certain other detainees FREE postage, however there is a brief mention of indigent postage under the INDIGENT heading.

## B. Inspection of Incoming Correspondence and Other Mail

The ICE Detention Standard with respect to incoming correspondence and other mail specifically provides procedure for this and states as follows:

*"**ALL** Facilities **SHALL** implement procedures for the inspection of all incoming general correspondence and other mail (including packages and publications) for contraband. The Staff **SHALL** open and inspect incoming general correspondence and other mail (including packages and publications) **IN THE PRESENCE** of the detainee ... ..."*

The Park County Detention Center has a policy of opening and inspecting general correspondence WITHOUT the presence of the ICE Detainee, though there are a few who will open mail in front of the ICE Detainee, it is not considered a general practice and is dependant on which officers and on what shifts the ICE Detainee mail is being handed out on.

## C. Inspection of Outgoing Correspondence and Other Mail

The ICE Detention Standard for the inspection of Outgoing Mail states:

*"Outgoing general correspondence and other mail may be inspected and/or read if the addressee is another detainee or if there is reason to believe the item might present a threat to the facility's secure or orderly operation, endanger the recipient of the public, or might facilitate criminal activity".*

Though the ICE Standard does permit Officers of the Park County Detention Center to inspect and read out going mail from detainee to detainee and those suspected of presenting a threat to either the facility or the public, it does not give Park County the permission to read all outgoing mail without warranted cause as they currently do.

Furthermore the **28 CFR § 540.14 (b)** of the Code of Federal Regulations specifically prevents the inspection and reading of all outgoing mail of ALL ICE Detainees by stating:

"Outgoing mail in minimum and low security level institutions, and of pretrial detainees in **ALL** institutions **MUST** be sealed by the detainee and sent out **UNOPENED** and **UNINSPECTED**"

Petitioner Vaupel informed the Park County Administrator of this violation regarding the inspection of outgoing mail and demonstrated this by showing them a copy of **28 CFR § 540.14 (b)**, however this complaint fell on deaf ears, subsequently Petitioner Vaupel wrote a Kite to ICE officers of his complaint regarding this issue who inform this issue was being addressed however to this date, still nothing has been done. **(See Exhibit S1)** Therefore by the Administrators of the Park County Detention Center, insisting that all ICE Detainee outgoing mail remain **unsealed (See Exhibit S2)** so that this mail may be inspected, are actually in violation of a Federal Code and therefore violating an ICE Detainee's rights and leaving themselves open to various forms of legal actions and sanctions.

## D. Rejection of Incoming and Outgoing Mail

The ICE Detention Standard regarding the rejection of incoming and outgoing mail to and from ICE Detainees is very specific in its requirements and states: *"ALL Facilities SHALL implement policies and procedures addressing the issue of acceptable and non-acceptable mail. Procedures SHALL cover the rejection of incoming and outgoing mail rejected for reasons of facility order and security. Incoming and outgoing general correspondence and other mail may be rejected by the Officer in Charge to protect the security, good order, or discipline of the institution; to protect the public; or to deter criminal activity......The affected detainees SHALL be notified when incoming or outgoing mail is confiscated or withheld (in whole or in part). The detainee SHALL receive a receipt of the confiscated or withheld item(s)".*

The Park County Detention Center offers NO instructions in their handbook or any where else, as to rejected mail and the process with dealing with such,

furthermore the Park County Detention Center has a bad habit of rejecting ICE Detainees general correspondents and NOT issuing the ICE Detainee with any notification as such.

In fact in several similar incidents, Petitioner Farinas-Perez had several pieces of general correspondence containing letters and money orders returned to his family yet he was given NO NOTIFICATION of this action by the Administrators of the Park County Center, furthermore this was not just an error due to the fact that when Petitioner Farinas-Perez's family finally received these two pieces of correspondence back they discovered that this correspondence and money orders had been removed from their original envelopes and returned to them in Park County Detention Center envelope further evidencing the fact that this was more that just a mistake, finally to make matter worse, when Farinas-Perez's family called the Park County Detention Center to enquire why they were opening reading and then resending this correspondence back to them, they were shocked to hear from a Park County Officer, that Petitioner Farinas-Perez had been deported and that is why his mail was being sent back. Hard to believe considering Petitioner Farinas-Perez was and still is in the Park County Detention Center at the time.

## E. ICE Detainee's Requirement for Postage Allowance

The ICE Detention Standard for ICE Detainees Postage Allowance states:
*"The Officer in Charge **SHALL** establish procedures to provide indigent detainees the postage allowance that is available at government expense. Indigent detainees **WILL** be permitted to mail a reasonable amount of mail each week, including at least five pieces of **special correspondence** and **three** pieces of **general correspondence**.*

*Indigent ICE Detainees **WILL** be permitted to mail the following at* **GOVERNMENT EXPENSE:**

1. *All correspondence related to a legal matter, including correspondence to a legal representative, potential legal representative, and any Court,*

2. *Packages containing personal property, when the Officer in Charge determines that storage space is limited and that mailing the property is in the government's best interest".*

The Park County Detention Center and its Administrators **DO NOT** allow indigent Detainees to mail either general or special correspondence at the Governments expense as specifically required the ICE Detention Standard. **(See Exhibit E)** Though they do mail out all indigent detainees' general and special correspondence, the Park County Administrators CHARGE a NEGATIVE BALANCE against an indigent ICE Detainee's "inmate account" so that should the indigent ICE Detainee have funds eventually added to his "inmate account" these funds will be eaten up by the Negative Balance associated from his supposed to be FREE OF CHARGE legal mail. **(See Exhibit T)**

This practice of charging indigent ICE Detainees surely MUST NOT only be a obvious and deliberate violation of the ICE Detention Standard that Park County Administrators are required to abide by, for all ICE Detainees, but surely must be a violation of the ICE Detainees Constitutional rights of Access to the Courts.

## F. <u>Failure to Supply ICE Detainees with Pens, Paper and Envelopes</u>

This ICE Detention Standard is short but very explicit and states:
*"The facility **SHALL** provide writing paper (tablets), writing implements (pens) and envelopes at **NO COST** to **ALL ICE Detainees".***

The Park County Detention Center does not supply any of the above to any detainee apart from an unusable flex pen to indigent detainees as addressed in the Law Library Section of this Complaint. All ICE Detainees including those that are indigent, are required to purchase all writing paper/tablets and envelopes from the Commissary list for an inflated price and therefore considerable expense to the

detainee when all these item should be supplied FREE OF CHARGE to all detainees NO matter the condition of their financial status.

## G. Correspondents with Representatives of the News Media

The ICE Detention Standard for Correspondence with Representatives of the News Media clearly states:

*"A detainee may use special mail/correspondence to communicate with representatives of the News Media......Representatives of the News Media may initiate correspondence with a detainee. However, this will be treated as special correspondence only if the envelope is properly labeled with the name, title, and office of the media representative, clearly indicating its "special" nature".*

Though the Park County Detention Center does not have any standards with regards to an ICE Detainees correspondence with the News Media, Petitioner Vaupel, after discussing this issue with officers of the Park County Detention Center, is anticipating difficulty in this area and therefore requests that the Courts issue a ruling in this area before any substantial difficulties can and will take place on this issue.

## H. Relief Sought Regarding Correspondence and Other Mail

All Petitioners respectfully request relief from this Court by Ordering the Respondents to adhere to all the Regulations of the ICE Detention Standards with the regards to the Park County Detention Center ICE Detainee Correspondence and Other Mail, these requests include but are not limited to, the Court Order the following:

1. That the Park County Detention Center modifies its methods and contents of notification with regards to the Park County Detention Center's policies regarding ICE Detainee incoming and outgoing mail and that the Park County Administrators publish and distribute a Park County ICE Detainee handbook with these upgraded regulations and requirements in line with the ICE Detention Standards.

2. That Park County Detention Center and Administrators upgrade their policy of opening incoming ICE Detainee correspondence to read that all ICE Detainee correspondence will only be opened and inspected in the presence of the recipient ICE Detainee.

3. That the Park County Detention Center be ordered to NOT open and inspect any OUTGOING ICE Detainee correspondence as per the Code of Federal Regulations **28 CFR § 540.14 (b)** which specifically requires that all outgoing mail from ICE Detainees be sealed and sent out unopened and un-inspected.

4. That upon rejection of an ICE Detainees incoming mail, the Park County Detention Center be required to issue a letter of notification and or a detailed receipt including a full explanation of the contents and reason for the rejection along with options that the ICE Detainee may choose from as to what is to be done with this rejected mail.

5. That the Park County Detention Center be required to send out all legal mail for ALL indigent ICE Detainees FREE OF CHARGE, who may or may not represent themselves in any Legal Matter and that indigent ICE Detainees be allowed to send at least 3 pieces of general correspondence PER WEEK.

6. That ICE and the Park County Detention Center be required to supply ALL ICE Detainees with regular writing pens, lined white paper tablets and plain white envelopes, FREE OF CHARGE weekly as specifically required by the ICE Detention Standards.

7. That the Park County Detention Center be required to allow ALL ICE Detainees to use the Special/Legal mail guidelines when sending ANY document(s) to any member of the media and that there SHALL be no reprisal for doing so no matter to contents of that mail

## 5. Insufficient Process of ICE Admission and Release Procedures

The ICE Detention Standard for Detainee Admission and Release clearly states: *"The procedures a facility follows in admitting and releasing detainees protect the health, safety, and welfare of each person. During the admissions process, detainees undergo screening for medical purposes; **have their files** reviewed for **CLASSIFICATION** purposes; submit to a standard body search; and personally*

*observe and certify the examination, categorization, inventorying, and safeguarding of all personal belongings......".*

The Petitioners firmly assert that this very serious issue MUST now be addressed in great detail as the Park County Detention Center is in MAJOR breach of this ICE Standard in that, as ICE Detainees have been transferred to the Park County Detention Center, upon admittance, **NO** classification procedures were ever implemented so therefore you have ICE Detainees from all classifications cohabitating together in the ONE and ONLY ICE Detainee Pod at the Park County Facility.

## A. New Arrivals

The ICE Detention Standard for New Arrivals requires that:

*"Every new arrival **SHALL** undergo screening interviews, complete questionnaires and other forms, **attend the facility's site-specific orientation program**, and comply with other admission procedures (issuance of clothing, towel, bedclothes etc.)*

1. *The Orientation process **supported by a video** (INS) and handbook **SHALL** inform new arrivals about facility operations, programs, and services. Subjects covered will include prohibited activities and unacceptable and the associated sanctions.*

2. *Staff **WILL** issue every arriving detainee personal-hygiene items, clothing, sheets and blankets appropriate for local whether conditions.*

3. *Medical screening protects the health of the detainee and others in the facility".*

Upon admittance to the Park County Detention Center, all ICE Detainees go through the standard admission procedures, however the Park County Administrators and Officers **DO NOT** present ICE Detainees with a Park County Detention Center **orientation video** explaining everything that an ICE Detainee is

required to know about this facility he has just been relocated too, the use of a site specific orientation video is strictly required by the ICE Detention Standard.

Furthermore the Park County Detention Center **DOES NOT** produce and distribute a Detainee handbook that has been specifically produced just for ICE Detainees and is available in multiple languages as also required by the Ice Detention Standard.

The requirement for the issue of listed hygiene items is not being met by the Park County Detention Center, the Park County Administrators policy to only give basic hygiene items (below the requirement) to those that are indigent has been an extremely contentious issue between ICE Detainees and Park County Administrators and Officers however this issue will be addressed in more detail below.

Finally, as previously address, the Park County Detention Center is in extreme violation by NOT conducting TB testing during the induction process as required by the ICE Detention Standard, this dangerous practice not only places ICE Detainees lives in danger but also those of the Officers and staff as well.

## B. Failure to Provide Required Personal Hygiene Items

Though this issue may be of minor concern compared to the more serious ICE Detention Standards violations, this issue still has been of major concern and cause for much unrest between Park County Administrators, Officer and ICE Detainees. With regard to the ICE Detention Standards for the supply of hygiene products to the ICE Detainees by the Park County Detention Standard clearly requires that:

*"Staff **SHALL** provide male and female detainees with the items of personal hygiene appropriate for, respectively, men and women. They will replenish supplies as needed. In all contract detention facilities, each ICE Detainee **WILL** receive, at a **MINIMUM**, the following items:*

*1.* *One bar of bath soap, or equivalent;*

*2.* *One **comb**;*

*3.* *One tube of toothpaste;*

*4.* *One toothbrush;*

*5.* *One bottle of **shampoo**, or equivalent; and*

*6.* *One container of **skin lotion**.*

*The Officer in charge may modify this list, e.g. to accommodate use of bulk liquid soap and Shampoo dispensers. The responsible housing unit officer will replenish personal hygiene times on an as-needed basis, in accordance with written facility procedures. The Officer in Charge may establish and empty container exchange system......Unbreakable hair brushes with soft, synthetic bristles, allowed to replace combs......."*

As clearly required by the ICE Detention Standard, the Park County Detention Center **MUST** supply **ALL** ICE Detainees with all hygiene items listed above upon request, yet in **DELIBERATE VIOLATION** of this standard the Park County Officers and Administrators will ONLY give soap, toothbrush and toothpaste to **indigent** ICE Detainees when the ICE Standard specifically requires Park County to issue **ALL** ICE Detainees, irrespective of their financial status, the 6 required hygiene items listed above. It is this fact alone, with Park County refusing to issue these required items that has caused several incidences and arguments between ICE Detainees and Staff of Park County when in reality Park County Administrators are in CLEAR VIOLATION of the ICE Detention Standard by not doing so, simple common sense and compliance with the Standards by Park County Administrators could have alleviated considerable unrest within the ICE Detention housing unit.

## C. <u>Failure to Provide Orientation Production for ICE Detainees</u>

The ICE Detention Standards clearly require the Park County Detention Center, compile and produce an Orientation Video which can be displayed to all new ICE Detainees being admitted to the Park County Center, the ICE Standard requires:

*"**ALL** Facilities **SHALL** have a medium to provide ICE Detainees an orientation to the facility. In contract detention facilities the ICE office of jurisdiction **SHALL** approve all orientation procedures. In all contract detention facilities, the Officer in Charge **SHALL** screen the facilities orientation video for every detainee as part of the admission process. The video **SHALL** contain:*

1. *Produced with either professional or local resources, the orientation video **SHALL** meet the Standards of quality established by the ICE District Office.*

2. *The video **WILL** be in English and Spanish or English and the most prevalent language(s) spoken by detainees at the facility. The Officer in Charge **WILL** establish procedures ensuring the availability of an interpreter for a detainee who does not speak the language(s) used in the video. The interpreter **WILL** be available for orientation and scheduled meetings with the detainee. Outside sources may be used in pressing circumstances.*

3. *The video **WILL** present an overview of the facility operations that most affect the detainees. The Officer in Charge may supplement the required information, with explanations of particular policies, rules and procedures. At a **MINIMUM**, each video **MUST** provide the following:*

   a. *The Officer in Charge's introductions;*

   b. *Typical detention case chronology (what most detainees can expect);*

   c. *Authority, responsibilities, and duties of security officers;*

   d. *How the detainee can contact deportation officers handling his case;*

e.  *Availability of Pro Bono legal services and how to pursue such services in the facility (location of current listings etc.);*

f.  *Standards of conduct, including acceptable and unacceptable detainee behavior, with an overview of other rules and requirements;*

g.  *Disciplinary procedures, including criminal prosecution; grievance procedures; appeal process;*

h.  *Introduction to the individual departments (recreation, medical, etc.); the various housing units; and food service;*

i.  *Schedule of programs, services, daily activities, including visitation, telephone usage, mail service, religious programs, count procedures, access to and use of the LAW LIBRARY and the general library; sick-call procedures, etc; and*

j.  *Voluntary work program, with specifics including how to volunteer.*

*........A question and answer session between detainees and officers **WILL** follow the video. Officers **SHALL** respond to the best of their abilities......."*

The Park County Detention Center does NOT have any form of orientation for any New ICE Detainee arrivals and therefore is purely reliant on other detainees within the facility, procedures etc., however this policy of NO orientation has been the cause of a number of issues, particularly with ICE Detainees relocated from the ICE Detention Facility in Aurora to the Park County facility. These problems have arose due to the fact that the Park County Detention Center is effectively a County Jail and therefore is operated in a considerably different fashion to that of the ICE Detention facility and therefore had ICE Detainees in the past, been subjected to this orientation video, many problems that have risen could have been alleviated.

## D. Orientation Relief Sought

All Petitioners respectfully request relief from this Court by Ordering the Respondents to adhere to all the Regulations of the ICE Detention Standards with

the regards to the Park County Detention Center ICE Orientation Program, these requests include but are not limited to, the Court Order the following:

1. That the Park County Detention Center produces and orientation video and corresponding handbook in multiple languages and that this video be displayed and handbook distributed to all incoming ICE Detainees during the intake procedure.

2. That Park County Detention Center be required to issue ALL ICE Detainees the required hygiene items as specified by the ICE Detention Standards and the these hygiene items be supplied to ALL ICE Detainees FREE of CHARGE and replenished upon request.

3. That the Park County Detention Center be required to conduct full medical testing including TB testing of all ICE Detainees during the intake process as required by law.

## 6. <u>Non Conformity with ICE Detainee Classification System</u>

The ICE Detention Standard Policy on Detainee Classification clearly states: *"ALL ICE Detention facilities WILL implement this Detainee Classification System (DCS). Contract Detention Facilities CDF's may continue using the systems established locally, if the classification criteria are objective and all procedures meet the ICE requirements. Also the classification system created through these standards will ensure that each detained alien is placed in the appropriate category and PHYSICALLY SEPERATED from detainees in other categories".*

The Petitioners firmly assert that this very serious issue MUST now be addressed in great detail as the Park County Detention Center is in MAJOR breach of this ICE Standard in that, as ICE Detainees that have been transferred to the Park County Detention Center, upon admittance, NO classification procedures were ever implemented so therefore you have ICE Detainees from all classifications cohabitating together in the ONE and ONLY ICE Detainee Housing Unit at the Park County Facility.

## A. Failure to Implement the Required Standards and Procedures

The ICE Detention Standard for ICE Detainee Classification and Procedures clearly states: *"The facility **SHALL** abide by ICE policy, rules and guidelines as set forth in this Standard and implement the attached Detainee Classification system* (**See Exhibits U1-5**) *for classifying detainees. This Classification System ensures:*

1. *That **ALL** detainees are classified upon arrival, before being admitted into the general population. ICE **WILL** provide Contract Facilities with the data they need from each detainee's file to complete the classification process. All officers assigned to classification duties **SHALL** be trained in the facility's ICE classification process.*

2. *That if the detainee **CAN NOT** be classified without certain information that is missing at the time of processing, the detainee **WILL** be kept apart from the general population pending arrival of those data. Upon completion of the classification process possible, the detainee **SHALL** be housed in the general population.*

3. *That the First Line Supervisor **WILL** review and approve each detainee's classification levels.*

4. *That Detainees **SHALL** be assigned housing, offered recreational activities, assigned work (at the detainees request), and provided food service according to their classification levels.*

*In **ALL** Contract Detention Facilities, upon completion of the classification process, staff will assign individual detainee's color coded uniforms and wristbands. The assigned uniform will correspond to the detainee's classification level, as follows:*

| | | |
|---|---|---|
| ***DARK RED*** | – | ***LEVEL 3 (highest threat)*** |
| ***BRIGHT ORANGE*** | – | ***LEVEL 2 (medium)*** |
| ***DARK BLUE*** | – | ***LEVEL 1 (lowest)*** |

*Uniformity of Color Codes in all Contract Detention Facilities **IS REQUIRED**. This single system of color coding permits staff to readily identify a detainees classification on sight thus eliminating confusion, preventing miscommunication with potential **SERIOUS** consequences, and facilitating consistency throughout the facility ".*

The problem with the Park County Detention Centers system of classifying ICE Detainees held within their facility is **THAT THEY DON'T HAVE ONE**. ALL the ICE detainees held at Park County on a contract hold, are all held together in the one Pod yet all the ICE detainees here in question, were all from different classifications, colors, and Pods while being detained at the ICE in Aurora Facility.

This policy of Park County mixing all the various classified detainees, dressing them all in the same uniform and placing them altogether in the one Pod has created a potentially dangerous and volatile situation. Presently there is considerable violence taking place, the few remaining Level 1 detainees (BLUE) at Park County often keep to themselves and therefore are not participating in recreation activities for fear of being caught up in the acts of violence that take place on almost a daily basis, while you have the upper level 2's and level 3 detainees have taken control and "bull dogging" the lower level detainees.

## B. The Required Classification Levels and Housing Assignments

The ICE Detention Standard is very specific in this area and states:

*"**ALL** facilities **SHALL ENSURE** that detainees are housed according to their classification level. **ALL** classification levels are decided by the general makeup of the total population of the facility. **UNDER NO CIRCUMSTANCES** WILL issues of facility management or any other factors external to the detainee classification system influence a detainee's classification level. **ALL** new arrivals are generally classified by **convictions** when assessing the criminal record reports ".*

Furthermore the ICE Classification System lists classes as follows:

1. **Level 1 Classification**

    a.    May not be housed with Level 3 Detainees

    b.    May not include any detainee with a felony conviction that includes an act of physical violence.

    c.    May not include any detainee with an aggravated felony conviction.

    d.    May include detainees with minor criminal records and non-violent felonies.

2. **Level 2 Classification**

    a.    May not include any detainee whose most recent conviction was for any offence listed under the "Highest" section of the severity of offence guideline **(See Exhibits V1-4)**

    b.    May not include any detainee with a pattern or history of violent assaults, whether convicted or not. A pattern is considered established for purposes of this guideline when an arrest record reveals two or more arrests in a five year period for assault where force was used against another person with the intent to commit bodily injury.

    c.    May not include any detainee convicted for assault on a correctional officer while in custody or where a previous institutional record suggests a pattern of assaults while in custody.

3. **Level 3 Classification**

    a.    May include those detainees reclassified from level 1 and level 2 due to institutional incidents or changes in classification information.

    b.    May be reclassified to Level 2 only based on institutional behavior, provided number 2a. through 2d. above do not apply (detainee must be in custody for a minimum of 60 days before reclassification).

Level 3 detainees are considered a high risk category requiring medium to maximum security housing. Level 3 detainees MUST always be monitored and escorted.

As previously addressed, the ICE Detention Standard is very specific in its requirement and purpose and is strictly adhered to by the ICE Aurora Facility, yet here at the Park County Detention Center it appears that both ICE and Park County don't consider this very serious problem of mixing all classifications in the one pod, to be an issue and is evident by the lack of response to the many requests of ICE detainees to be separated and even a formal letter addressed to ICE Aurora regarding ICE Detainees serious concerns with this issue. **(See Exhibit V5-6)**, Petitioner Vaupel then follow up that letter with another Kite emphasizing the seriousness of their decision NOT to do anything, this Kite was responded by ICE Officer Almeida who was obviously under the impression from Officers of the Park County Detention Center that this issue had been fixed **(See Exhibit V7)** however to this date of filing, NOTHING has been done and it is only a matter of time before someone is SERIOUSLY HURT, therefore due to the fact that, ICE Detainees have made both Park County Administrators and ICE Officers of Aurora aware of this DANGEROUS situation that still remains, should anyone be injured, both ICE and Park County WILL be totally liable for this situation.

## C. Housing Assignments

Furthermore, the Petitioners claims are even further supported by statement under the heading of "Housing Assignments" in the ICE Detention Standards which clearly states the following:

*"The Classification System **SHALL** assign detainees to the least restrictive housing unit consistent with facility safety and security. By grouping detainees with comparable records together, **and isolating those at one classification level from all others**, the system reduces non criminal and non violent detainees' exposure to physical and **PSYCHOLOGICAL** danger".* **(Emphasis Added)**

The purpose of this Classification System is to identify and isolate the detainees whose histories indicate the characteristics of the hardened criminal, the category

most likely to intimidate, threaten, or prey on the vulnerable and due to both ICE's and Park Counties lack of respect or observance of this important standard, this is exactly what is NOW happening in the ICE Detainee housing unit of the Park County Detention Center.

The ICE Detention Standard also recognizes the **occasional** need and necessity to house ICE Detainees of different classification levels for the purposes of overcrowding and **temporary** housing BUT has very specific and strict guidelines for this procedure and states that these guidelines **SHALL** be strictly adhered too. These Guidelines in the ICE Detention Standard are as follows:

1. *Level 3 detainees **WILL NOT** be housed with Level 1 detainees.*

2. *Level 1 and Low Level 2's may be mixed and High Level 2's and Level 3 may be mixed but only when a facility is at or **above full capacity.***

3. ***Under NO CIRCUMSTANCES** will a Level 2 detainee with a history of assaultive or combative behavior be placed in a level 1 housing unit.*

4. *In facilities that have single cell living arrangements, detainees that pose an immediate and serious threat of violence to staff or other detainees shall be housed there.*

For all the foregoing reasons it is the Petitioners firm belief that both ICE and the Park County Detention Center are in extreme violation of the ICE Detention Standard for not following strict guidelines with regards to Detainee Classification.

## D. Classification Relief Sought

All Petitioners respectfully request relief from this Honorable Court by Ordering the Respondents to adhere to all the Regulations of the ICE Detention Standards with the regards to the ICE Detention Standard Classification System, these requests include but are not limited to the Court Order the following:

1. That the Park County Detention Center be ordered to conform to all the requirements with regard to the ICE Detention Standard Classification

System and that ICE be ordered to present Park County with the necessary classification information and the pre determined classification ratings from the ICE Aurora Facility to enable Park County to accurately Classify and separate the ICE Detainees at the Park County Detention Center.

2. That Park County be required to perform the required classification procedures and upon completion, be ordered to separate the ICE Detainees into their respective classifications and into separate Detention Pods with in the Park County Facility while at the same time keeping all ICE Detainees completely separated from the County and Colorado Department of Corrections criminal inmates also housed within the Park County Detention Center.

3. That this Honorable Court GRANT all ICE Detainees housed at the Park County Detention Center immediate "Preliminary Injunctive Relief" in the form of an immediate Court Order, ordering the United States and Immigration and Customs Enforcement **REMOVE ALL ICE Detainees (36 Detainees)** from the Park County Detention Center and relocate them back to the ICE Aurora Detention Facility until this **DANGEROUS issue and practice** by ICE and the Park County Detention Center, of Classification mixing can be later resolved by the Court in final hearings with regards to the Permanent Injunctive Relief sought by the Petitioners, to prevent future continuance of this practice in breach of the ICE Detention Standards.

## 7. <u>Non Conformity with ICE Detainee Grievance Process</u>

ICE's Policy in their ICE Detention Standard with regard to the Detainee Grievance Procedures clearly states the following:

"*EVERY facility WILL develop and implement Standard Operating Procedures (SOP) that address detainee grievances. Among other things, each SOP must establish a reasonable time limit for: (1) processing, investigating, and responding to grievances; (ii) convening a grievance committee to review form complaints; and (iii) providing written responses to detainees who filed formal grievance, including the basis for the decision. The standard operating procedures MUST also prescribe procedures applicable to emergency grievances. All grievances WILL receive supervisory review, and include guarantees against reprisal*".

The Detention Standard further states that this policy shall apply to all facilities holding ICE Detainees for more that 72 hours whom have a Detention Contract with the United States Immigration and Customs Enforcement. The named Petitioners have been detained at the Park County Detention Center since May 31, 2006, and have been informed by ICE that they will remain here until a conclusion is reached in their cases this being either release or removal. As the violations of the ICE Detention Standards are numerous the Petitioners will address each issue as listed in the Detention Standard.

## A. Informal or Oral Grievances

The ICE Detention Standard for informal or oral grievances clearly states: *"The Facility **SHALL** make every effort to resolve the detainee's complaint or grievance at the lowest level possible, in an orderly and timely manner. Each facility **WILL** institute procedures for informal resolution of oral grievances. The Officer in Charge (OIC) will establish procedures for detainees to orally present the issue of concern informally to any staff member at any time within **FIVE DAYS** of the event that is precipitating the grievance. The detainee is free to bypass or terminate the informal grievance process, and proceed directly to the formal grievance stage. If an oral grievance is resolved to the detainee's satisfaction.......the staff member **WILL** document the results for the record and place his/her report in the detainees detention file".*

This process for resolving oral grievances is simple and requires basic common sense and the requirement for logging all detainee grievances is a form of safety net and is an important process for the ICE Detainees and Officers alike in determining and perhaps demonstrating a behavioral pattern by either party and especially by Officers with regards to perhaps discrimination or even racial issues.

The Park County Detention Center does not use any of the ICE Detention Standards with regards to the Oral or Informal Grievance process, furthermore the

required practice for Park County Officers to log all verbal grievances is also not adhered to, though this procedure may not be so much of a safety or security issue, it is an important process however for establishing patterns of behavioral abuse by both detainees and officers.

There have been instances within the Park County Detention Center of several Detention Officers demonstrating both prejudice and discriminatory behavior toward ICE Detainees and on several occasions this behavior has even bordered potential racial issues involving only ICE detainees and Oral grievances, had the Park County Detention Center kept a log of these verbal grievances, patterns of behavior could have been established and acted on by the facility.

## B. Insufficient and Inadequate Formal Written Grievance Procedures

The ICE Detention Standard for Formal Written Grievances clearly states: *"The Officer in Charge **MUST** allow the detainee to submit a formal, written grievance to the facility's Grievance Committee. The detainee may take this step because he is not satisfied with the out come of the informal process, or because he decides to forgo the informal procedures. The detainee **SHALL** be given the opportunity to obtain assistance from another detainee or facility staff in preparing a grievance......When a first line supervisor receives a formal grievance, he/she **WILL** officially meet with the detainee to attempt to resolve the issue. If the grievance can not be resolved to the satisfaction of the detainee, the supervisor **WILL** notate the detainee grievance form and refer the written grievance to the next level supervisor in his/her chain of command or to the appropriate department head.......If the detainee does not accept the department head's solution, a Detainee Grievance Committee (DGC) **WILL** convene to study the grievance within 5 working days of the detainees APPEAL. In Contract Detention Centers at least one member of the grievance committee **WILL** be an ICE employee.......The DGC may call witnesses, inspect evidence or otherwise gather*

*facts essential to an impartial decision. The committee **WILL** offer the detainee the opportunity to appear before it to present his/her case, answer questions and respond to conflicting evidence or testimony..... ".*

The ICE Detainee Grievance Process is a very important tool necessary for ICE Detainees to be able to air there complaints and grievances against Officers, conditions and other detainees and for these reason the ICE Detention Standard is very specific in its procedures and administrative use.

Though the Park County Detention Center does adopt a very rudimentary form of grievance procedures, the grievance system, in its process and effectiveness is virtually non existent. The "Park County Jail Inmate Resolution Request" form is somewhat simple in construction **(See Exhibit W1)** and in the same principle but does not really suffice as a substitute for the ICE Detainee Grievance Form **(See Exhibit W2-4)** however this is where the similarities between the Park County Grievance procedures and the ICE Detention Standard end.

As required by the ICE Detention Standards, Park County DOES NOT have any written procedures to provide for and informal resolution of oral grievances so therefore the 5 day time limit requirements by detainees are non applicable.

Though the ICE Detainee's can forgo the informal process and proceed directly with the Formal process by completing a Park County grievance form and handing it to an officer, these forms are often ignored, returned weeks later unanswered or worse still never returned at all.

There appears to be NO form of formal review involving the ICE Detainee, of a grievance by an Officer in Charge or any form of appeal to a Grievance Committee should that Detainee disagree with the Staff Response to that grievance and most importantly there is absolutely NO communication between the staff of Park County and ICE Officers as required by the ICE Detention Standard, in fact, the ONLY way that ICE Detainees at Park County have been able to bring these

grievances to ICE's attention is to forward copies of these grievances to ICE Officers themselves either through the mail or by personally handing the grievance to the ICE officers who visit the facility weekly but even then it appears that this process "falls on deaf ears" as responses from ICE Officers are usually very vague and normally inform the Detainee to refer there grievance to the Park County Officers, again another futile response as the only reason for an ICE Detainee to even refer a grievance to ICE officers is due to the lack or response by Park County in the first place only further showing the failure of this system.

Finally the Park County Detention Center "Inmate Handbook" does not include any of the necessary mandated requirements explaining all the steps in the grievance process as specifically required by the ICE Detention Standards, these requirements include (a) Inform and Formal Grievance procedures; (b) The appeals process and step-by-step procedures; (c) in Contract Detention facilities: procedures for filing an appeal with ICE; (d) Staff/Detainee availability to help during the grievance process; (e) Guarantee against staff retaliation for filing/pursuing a grievance; and (f) How to file a complaint about officer misconduct with the Department of Justice.

## C. Failure of the Grievance Procedure with in ICE

The ICE Detention Standards for grievance procedures to ICE Officers is very specific in its procedure and application and clearly states:

*"All the ICE Detainees SHALL have the opportunity to submit written questions, requests or concerns to ICE staff by using the attached detainee grievance form"* **(See Exhibits W2-4)** Though the ICE Detention Standard make allowances for ICE Detainees to submit grievances to ICE Officers, ICE Detainees at the Park County Detention Center are NOT supplied with any of the necessary forms or documents which are necessary to complete this process successfully, in fact,

Petitioner Vaupel was not even aware that an Official ICE Grievance Form existed until research for this Class Action proved otherwise.

**D. <u>Grievance Process Relief Sought</u>**

All Petitioners respectfully request relief from this Honorable Court by Ordering the Respondents to adhere to all the Regulations of the ICE Detention Standards with the regards to the ICE Detention Standard Grievance Process, these requests include but are not limited to the Court Order the following:

1. That the Park County Detention Center be ordered to conform to all the requirements with regard to the ICE Detention Standard Grievance Process including keeping written log of all oral grievances as required, verbal resolution of informal grievances, the formation of a Grievance Committee for resolution of Formal Grievances, the formation of an adequate appeals process, and finally construct adequate channels of communication for grievance resolution by ICE officers in the event that such resolutions can not be reach within the Park County Detention Center.

2. That Park County be required to alter, publish and distribute a Park County Detention Center ICE Detainee Handbook establishing and printing all the grievance procedures for ICE Detainees within this Handbook as required by the ICE Detention Standards for the Park County Detention Center.

3. That ICE Officers produce and make available to ICE Detainees, the necessary Formal Grievance Forms required by ICE Detainees, to document and file valid grievances with ICE Deportation Officers. **(See Exhibit W2-4)**

## 8. <u>NO Production and Distribution of ICE Detainee Handbook</u>

ICE's Policy in their ICE Detention Standard with regard to the Detainee Handbook clearly states: *"Every Officer in Charge will develop a sit-specific detainee handbook to serve as an overview of, and guide to, the detention policies, rules, and procedures in effect at the facility. The handbook will also describe the services, programs, and opportunities available through various sources, including the facility, ICE, private organizations, etc. Every detainee will receive a copy of the handbook upon admission to the facility".*

The Detention Standard further states that this policy shall apply to all facilities holding ICE Detainees for more that 72 hours whom have a Detention Contract with the United States Immigration and Customs Enforcement. The named Petitioners have been detained at the Park County Detention Center since May 31, 2006, and have been informed by ICE that they will remain here until a conclusion is reached in their cases this being either release or removal. As the violations of the ICE Detention Standards are numerous the Petitioners will address each issue as listed in the Detention Standard.

A. **Non Compliance with Handbook Standards and Procedures**

The ICE Detention Standard for the Park County Detention Center's production and issuance of ICE Detainee relevant handbooks clearly states the following: *"**EVERY** Facility will develop an ICE Detainee relevant handbook. Contract Facilities **WILL** use the attached handbook as a template or model......While every detention handbook will conform to the format used in the attached example, ever Officer in Charge **WILL** customize the contents as shown"*.

Therefore once a basic format for the Park County Detention Center ICE Detainee Handbook has been established based on the supplied format, the ICE Detainee handbook is required to include the following information:

1. The Overview will briefly describe individual programs and services and associated rules. Among others, these include recreation, visitation, education, voluntary work, telephone use, correspondence, library use, and the canteen/commissary. The overview will also cover medical policy (sick call); facility issued items, e.g. clothing, bedding, etc.; access to personal property; and meal service.

2. The handbook will specify in greater detail the rules, regulations, policies, and procedures with which every detainee must comply, including, but not limited to: smoking policy, restricted areas, contraband, and so forth.

3. The handbook will list detainee rights and responsibilities. It will also list and classify prohibited actions/behavior, along with disciplinary procedures and sanctions. This section will include grievance appeals procedures.

4. The handbook will be written in English and translated into Spanish and, if appropriate, into the next most prevalent language(s) among the facilities detainees. Furthermore the Officer in Charge will provide translation assistance to detainees exhibiting literacy or language problems and those who request it. This may involve the use of translators from the private sector or from the detainee population.

5. The Facility's orientation video may embellish or supplement the information provided in the handbook at the officer's discretion. However, the comprehensiveness of the video has no bearing on the development, production, or distribution of the detainee handbook.

6. The Officer in Charge will provide a copy of the handbook to every staff member who has contact with detainees. These staff members will also receive training focused on its merits.

7. The handbook will not be immediately reprinted to incorporate every provision. The Officer in Charge will instead establish procedures for immediately communicating such revisions to staff and detainees: posting copies of the changes on bulletin boards in housing units and other prominent areas; informing new arrivals during orientation processes; distributing a memorandum to staff, and so forth. The handbook will be revised on this piecemeal basis only to effect site specific changes or changes directed by Headquarters.

8. An appointed committee will conduct annual reviews of the handbook, after the annual review and revisions by facility department heads and the Officer in Charge.

## B. Detainee Handbook Relief Sought

The ONLY relief the Petitioners are seeking is that the Park County Detention Center be required to produce and distribute a Park County Detention Center ICE Detainee specific Detainee handbook including all the ICE Detainee Handbook requirements as required by the ICE Detention Standards and that this Handbook be published in multiple languages with special emphasis toward this handbook being published in Spanish.

## 9. NON Compliance with Staff, ICE and Detainee Communication

The ICE Detention Standard for Staff, ICE and Detainee Communication clearly states:

*"Procedures **MUST** be in place to allow for formal and informal contact between key facility staff and ICE staff and ICE detainees and to permit detainees to make written requests to ICE staff and receive an answer in an acceptable time frame".*

The Detention Standard further states that this policy shall apply to all facilities holding ICE Detainees for more that 72 hours whom have a Detention Contract with the United States Immigration and Customs Enforcement. The named Petitioners have been detained at the Park County Detention Center since May 31, 2006, and have been informed by ICE that they will remain here until a conclusion is reached in their cases this being either release or removal. As the violations of the ICE Detention Standards are numerous the Petitioners will address each issue as listed in the Detention Standard.

## A. ICE's Failure to Conduct Scheduled Contact with Detainees

This is perhaps one of the more serious issues needing immediate action, the ICE Detention Standard for Scheduled ICE contact with ICE Detainees states:

*"The purpose for these scheduled **WEEKLY** visits is to address detainees' personal concerns and to monitor living conditions. Facility or **District Deportation Staff** in the jurisdiction where these facilities are located **SHALL** conduct these scheduled **WEEKLY** visits. The visiting Officer **SHOULD** be familiar with ICE Detention Standards and **REPORT ALL VIOLATIONS** to the Field Office Director. The ICE Field Office Director **SHALL** devise a written schedule and procedure for weekly detainee visits by **DISTRICT ICE DEPORTATION STAFF**. The ICE officer **WILL** also visit the facilities Special Management Units (SMU) to interview any ICE detainees housed there, monitor housing conditions, review detainees' classification and basis for placement in the*

*SMU, and review all records in this regard. Written schedules **SHALL** be developed and posted in the detainee living areas and other areas with detainee access. The ICE Field Office Director **SHALL** have specific procedures for documenting the visit. Contract Detention Facilities with larger ICE Detainee populations **SHOULD** be visited more often than necessary".*

As previously stated, this issue is perhaps one of the most serious and contentious issues of all issues dealt with so far in that the constant and continual refusal by ICE Deportation Officers to visit the Park County Detention Center on a regular basis, or ANY basis for that matter, causes nothing but **confusion, anxiety, frustration and emotional outbursts** amongst the ICE Detainees <u>ABANDONED</u> here at Park County.

Back at the ICE Detention Facility in Aurora, the ICE Deportation Officers visit each of the pods on a weekly basis to answer any queries or concerns that an ICE Detainees may have regarding their cases this is evidenced by an ICE Deportation Officer Interview Schedule from the ICE Aurora facility. **(See Exhibit X)**

However, since the above caption Petitioners and other ICE Detainees have been relocated from the ICE Aurora Facility to the Park County Detention Center, which started from May 31, 2006, **NOT ONE ICE** Deportation Officer has **EVER** attended the Park County facility **AS REQUIRED**, to meet with any of the ICE Detainees to discuss their cases, concerns or grievances.

Though ICE does send up a ICE Transportation Officer weekly, or sometimes biweekly, to drop off and pick up ICE Detainees, ICE Deportation Officers DO NOT attend themselves. This ICE Transportation Officer is required to visit the ICE Detainees in their housing unit, drop of ICE Detainee mail, pick up and drop ICE Detainee communication Kites and supposedly try to solve some of the issues and grievances that ICE Detainees have.

Therefore consequently you have a situation where an ICE Transportation Officer is being sent in place of the ICE Deportation Officers, though these transportation officers attempt to quell the growing anger amongst the ICE Detainees, they have little success due to the fact that they are nothing more than transportation officers or glorified mail delivery persons in a fancy suit, these transportation officers, while they do their best and are respected for it, are unable to answer any ICE Detainee deportation case questions, have little or NO knowledge of the ICE Detention Standards and have little or NO success in solving any of the ICE Detainee concerns or grievances regarding the lack of attention by Deportation Officers and the below ICE Detention Standard living conditions and definitely NO success at solving major issues between ICE Detainees and the Officers and Administrators of the Park County Detention Center.

In fact, as this is such a distressing job for ICE Transportation Officers and having to deal with a multitude of ICE Detainee problems with little or NO support from the Deportation Officers, most Transportation Officers DO NOT last long, therefore asking to be reposted somewhere else, this became quite evident with a recent Transportation Officer Jessica McInish who constantly apologized to ICE Detainees for the lack of responses for her superiors, Officer McInish though she tried extremely hard to help, ended up requesting for a transfer due to the stressfulness of the position, in that she felt she was being lied to not only by Park County Administrators by also the Deportation Officers as well and was therefore the meat in the sandwich so to speak. Since Officer McInish there is a different transportation officer virtually every week, none are prepared for the onslaught of questions, queries, grievances and so forth, this situation has become so enflamed that it has been necessary for Park County to have an officer in the housing unit while the ICE Transportation officer is there, for safety reasons.

**B. <u>Failure to Adequately Respond to Requests from ICE Detainees</u>**

Another very serious problem is ICE Deportation Officers failure to respond to ICE Detainee requests in a timely manner and in some cases failure to respond at all, the ICE Detention Standard with regard to this issue is very specific and states: *"**ALL** detainees **SHALL** have the opportunity to submit written questions, request, or concerns to ICE staff using the attached detainee request form, local contract facility forms or a sheet of paper. The Officer in Charge **MUST** ensure that adequate supplies of detainee requests and writing implements are available........ The Officer in Charge **SHALL** ensure that the standard operating procedures cover detainees with special requirements, including those who are disabled, illiterate, or know little or NO English. Each facility **WILL** accommodate the special assistance needs of such detainees in making a request".*

Though the Park County Detention Center does have its own Kite system there is NO procedures for collecting, collating and delivering ICE Detainee requests to ICE Officers, in fact, the only way for an ICE Detainee to make sure that his request form will be delivered to ICE Officers is to give them to the ICE Transportation Officers when they attend Park County weekly.

Furthermore there is absolutely NO procedures in place to accommodate the disabled or illiterate, in fact, there is NO procedures listed for ICE Detainees in other languages, a definite issue considering the number of ONLY Spanish speaking detainees that are held at the Park County Detention Center off and on.

**C. <u>Inadequate Response Times</u>**

The ICE Detention Standard with respect to response times for ICE Detainee written requests by ICE Officer when there is NO on-site ICE officers available is very specific and states as follows:

*"The Detainee request **SHALL** be forwarded to the ICE office of jurisdiction within 72 hours and answered as soon as possible and practicable, but **NOT***

*LATER than within **72 hours** from receiving the request. If it is apparent that the request is serious in nature, procedures **SHALL** be in place for an **EXPEDITED** review and response to the detainee's request".*

From the very beginning, there is NO doubt that the ICE Transportation Officers are giving the ICE Detainee request form (Kites) to the ICE Deportation Officers within the required 72 hours, however this is NO way of confirming this unlike Kites that are written by ICE Detainees at the ICE Detention Facility in Aurora, which are Time and Date stamped by Detention Officers as soon as they are given to them.

But assuming that the ICE Transportation Officers are correctly performing their duties and delivering ICE Detainee Kites to ICE Deportation Officers within 72 hours, it is the ICE Deportation Officers who are failing to return these Kites in a timely manner IF AT ALL.

For example, Petitioner Vaupel sent 3 Kites to ICE Deportation Officer Alex Almeida, requesting information regarding his HQDPU custody review, the first request was sent August 23, 2006, the second request was sent September 6, 2006, and the third request was sent September 24, 2006, all requesting the same information, yet Petitioner Vaupel DID NOT receive any replies to any of these requests until October 17, 2006, some 55 days later and received all 3 Kites back at the same time which obviously indicates ICE Detainee requests are stock piled until and ICE Officer is designated to respond to ICE Detainee requests, this system of being required to wait many weeks if not months is just NOT acceptable and demonstrates ICE Officers TOTAL INDIFERENCE to ICE Detainees genuine requests and grievances which should have been dealt with in a more urgent manner. **(See Exhibits Y1-3)**

Petitioner Harmon has also sent several Kites requesting information regarding his case, these Kites were sent in mid August but he did not receive then back until

Mid October being an obvious violation of the ICE Detention Standard by ICE Officers. **(See Exhibits Y4-5)**

### D. ICE Detainee Communication Relief Sought

All Petitioners respectfully request relief from this Honorable Court by Ordering the Respondents to adhere to all the Regulations of the ICE Detention Standards with the regards to the ICE Detainee Communication System, these requests include but are not limited to the Court Order the following:

1. That ICE Deportation Officers be required to visit the Park County Detention Center at a MINIMUM of once a week and that the ICE Deportation Officer retain with them, the case files of all ICE Detainees so that upon their visitation ICE Deportation Officers will be properly equipped with all the necessary information and data in order to be able answer and appease all ICE Detainee questions, queries and grievances.

2. That ICE Deportation Officers be required to supply Park County Administrators with an adequate number of the required ICE Detainee request forms in multiple languages including English and Spanish and install proper procedures in Park County to ensure that all ICE Detainee communication and grievance forms are collected, collated and dispatched to ICE Deportation Officer within 72 hours including faxing these requests if necessary.

3. That ICE Officers be required to respond to all ICE Detainee request forms within 72 hours and that ICE Officers install process within the Park County Detention Center for expediting ICE Detainee requests forms when necessary and due to location, in order to reach these requirements within a timely manner, the Park County Detention Facility be ordered to send and receive this ICE Detainee request forms, if necessary, by facsimile.

## 10. Violations ICE Standards re: Issuance & Exchange Clothing Linens

The ICE Detention Standards with regards to the Issuance and Exchange of Clothing Bedding and Towels clearly states the following:

*"Basic hygiene is essential to the well being of detainees in the custody of the Immigration and Customs Enforcement (ICE). Therefore, ICE policy requires that*

*all facilities housing ICE Detainees in accordance with this standard provide clean clothing, bedding, linens and towels to every ICE Detainee upon arrival. Further, facilities **SHALL** provide ICE Detainees with regular exchanges of clothing, linens, and towels for as long as they remain in detention".*

The Detention Standard further states that this policy shall apply to all facilities holding ICE Detainees for more that 72 hours whom have a Detention Contract with the United States Immigration and Customs Enforcement. The named Petitioners have been detained at the Park County Detention Center since May 31, 2006, and have been informed by ICE that they will remain here until a conclusion is reached in their cases this being either release or removal. As the violations of the ICE Detention Standards are numerous the Petitioners will address each issue as listed in the Detention Standard.

## A. <u>Failure to Adhere to Standard and Procedures</u>

In order to be able to address the issues regarding the various problems with clothing, bedding and linen exchange the Petitioners will address each issue individually.

## B. <u>Clothing, Bedding, Linen and Towel Supply</u>

The ICE Detention Standard for the Issuance of Clothing, Bedding, Linen and Towel Supply is very specific in its requirement and clearly states:

*"Each detention facility **SHALL** have a policy and procedure for the regular issuance and exchange of clothing, bedding, linens and towels. The supply of these items **SHALL** exceed the minimum required for the number of detainees to prevent delay in replacing the items.......The excess-clothing inventory **SHOULD** meet and **exceed 200 percent of the maximum** funded detainee capacity. This will allow for adequate clothing exchanges and will ensure adequate clothing in case of unforeseen circumstances".*

The Park County Detention Center obviously does not meet the ICE Detention Standard with regards to the volume requirement of clothing kept in store, as a number of the ICE Detainees including Petitioner Vaupel are constantly having difficulty in obtaining the correct uniform in their sizes. For Example Petitioner Vaupel has not been able to receive a uniform in his size for over a month and will often have to wear the same uniform for a week to two weeks or be content with wearing a uniform larger than necessary being baggy and uncomfortable.

## C. NON Compliance Regarding Issuance of Clothing

The ICE Detainee Standard for the issuance of clothing clearly states: *"ALL new detainees SHALL be issued clean, temperature appropriate, presentable clothing during in processing. In Contract Detention Centers the standard issue of clothing is one uniform shirt and one uniform pair of pants; one pair of socks; one pair of underwear; and one pair of facility issued footwear. The color of the uniform will depend on the detainee's classification level. Additional clothing WILL be issued as necessary for changing weather conditions or as seasonally appropriate".*

There are a number of issues regarding the Park County Detention Centers issuance of clothing to ICE Detainees. Though the Park County Detention Center does provide ICE detainees with the minimum requirement as listed above, the Park County Administrators DOES NOT provide for the changing weather conditions. The Park County Detention Center is situated at Fairplay, Colorado, high in the Rocky Mountains; in fact, the elevation of the Detention Center is about 10,500 feet, therefore it is considerably colder all year round.

ICE Detainees held at the ICE Detention Facility in Aurora, Colorado, being at an altitude of only 5,200 feet are issued upon intake - 2 tops, 2 pants, 2 T-shirts, 2 Gym shorts, 1 long sleeve sweeter, 3 pairs of underwear and 3 pairs of socks, then from that point onwards ICE Detainees are permitted a NEW pair of socks weekly

on an exchange basis, old socks and underwear, once used are NOT reissued to any new incoming ICE Detainees.

The Petitioners are NOT demanding the same treatment but rather some level of human decency. Petitioners at Park County only received 1 top and 1 pant upon intake and were informed that if they wanted any other clothing they would be required to purchase it from commissary, this INCLUDED underwear and socks, and if you were indigent "Too Bad", indigent detainees were NOT assisted in any way. It was only after great unrest with in the housing unit that Park County Administrators then further issued ICE Detainees 1 T-shirt, 1 pair of underwear and several months later 1 pair of socks.

The Petitioners have further requested that they at least be given a long sleeve sweater for the cold and an extra T-Shirts and Gym shorts for recreation so that a detainee does not have to "Work Out" in his only cloths he has, then take a shower only to put on the same sweaty cloths.

Furthermore Park County Administrators will NOT replace damaged socks or underwear, in fact, Petitioner Vaupel, like all other Petitioners, is still having to wear the same pair of socks and underwear that was issued to him back in June of 2006. If ICE wishes to relocate ICE Detainees to another facility, they at least NEED to ensure that the Petitioners will be cared for and that all ICE Detainees will be detained by the receiving facility, in compliance with the ICE Detention Standards.

Finally since there is NO classification process for ICE Detainees at the Park County Detention Center, all ICE Detainees of various classifications are required to wear the same colored suit as that of Park County criminal detainees (Black and White stripes) when Park County Administrators are required to classify all ICE Detainees, separate and dress them in the respective colors: Level 1 – Blue, Level 2 – Orange, and Level 3 – Red.

## D. <u>NON Compliance Regarding Clothing, Bedding, Linen, Towel Exchange</u>

The ICE Detention Standard for the Exchange of Clothing, Bedding, Linen, and Towel Exchange specifically states the following:

*"Detainees **SHALL** be provided with clean clothing, linen and towels on a regular basis to ensure proper hygiene. Sock and undergarments **WILL** be exchanged daily, outer garments at least twice weekly and sheets, towels, and pillowcases a least weekly. In contract detention facilities, detainees **SHALL** be provided with clean clothing, linen and towels as follows:*

1. *Socks and underwear **SHALL** be exchanged daily;*
2. *Outer garments **SHALL** be exchanged at least twice a week, with a maximum of 72 hours between changes.........;*
3. *Volunteer Detainee workers may require exchanges of outer garments more frequently then every 72 hours;*
4. *Food Service Detainee Volunteer workers **SHALL** exchange outer garments daily;*
5. *Sheets, pillowcases and towel **SHALL** be exchanged at least weekly;*

*Clothing exchanges **WILL** generally be on a one for one basis to prevent hoarding and otherwise ensure an adequate supply of clothing. Detainees are **NOT** permitted to wash clothing, bedding, linens, tennis shoes or other items in the living unit, unless proper washing and drying equipment are available and the policy and procedures for their use are in place. Any washing and drying policies and procedures **SHALL** be posted in the washing area and **SHALL** be included in the detainee handbook".*

Unfortunately the Park County Detention Center Administrators DO NOT abide by this ICE Detention Standard, this is NO daily exchange of socks and underwear, Food Service Volunteers DO NOT exchange their outer garments daily and though there is weekly exchange of sheets, there is NO exchange AT ALL of pillow cases

and towels. Most Petitioners from the day that they arrived at Park County, in May and June, are still using the same socks, underwear, pillow cases, T-shirts, towels and BLANKETS that they received upon intake. Also since being housed at the Park County Detention Center, for some detainees as early as May, ICE Detainees have NOT been offered blanket exchange meaning some have using the same blankets for up to five months without being cleaned.

Though Park County does offer a daily laundry service for "Whites" (socks, underwear, pillowcases, T-shirts and towels) this laundry service is inefficient border lining DISGUSTING, that often "Whites" sent in to the laundry, come back dirtier and YELLOWER than when they went in and come back stinking of chlorine therefore a majority of ICE Detainees wash there own cloths in the housing unit, using hand soap, which of course is another violation of the ICE Detention Standard but under the circumstances the ICE Detainees housed at the Park County Detention Center DO NOT have much CHOICE.

## E. <u>Clothing and Linen Exchange Relief Sought</u>

All Petitioners respectfully request relief from this Honorable Court by Ordering the Respondents to adhere to all the Regulations of the ICE Detention Standards with the regards to the ICE Detainee Clothing and Linen Exchange System, these requests include that the Court Order the following:

1. That the Park County Detention Center, be required to purchase and implement ICE Detainee Uniform classification color uniform system and that Park County Administrators keep in stock, enough uniforms to equal 200 per cent of the ICE Detainee population and ranging in all sizes.

2. That the Park County Detention Center, be required to issue ICE Detainee more adequate clothing for the climate including classification color coded long sleeve sweaters, additional T-shirts and Gym shorts plus that the Park County Administrators be required to issue NEW socks and underwear upon request and on a one for one exchange basis.

3. That the Park County Detention Center be required to upgrade their procedures for laundry exchange to included socks, underwear, pillowcases, towels, T-shirts AND BLANKETS, and that the procedures for cleaning these garments be upgraded to an necessary health and safety standard, therefore preventing ICE Detainees from have to do their own laundry in their housing unit being another ICE Detention Standard violation.

# 11. <u>NON Compliance with Recreation Requirements</u>

The ICE Detention Standard for ICE Detainee Recreation Requirements states: *"All facilities **SHALL** provide ICE Detainees with access to recreational programs and activities, under conditions of security and supervision that protect their safety and welfare"*.

The Detention Standard further states that this policy shall apply to all facilities holding ICE Detainees for more that 72 hours whom have a Detention Contract with the United States Immigration and Customs Enforcement. The named Petitioners have been detained at the Park County Detention Center since May 31, 2006, and have been informed by ICE that they will remain here until a conclusion is reached in their cases this being either release or removal. As the violations of the ICE Detention Standards are numerous the Petitioners will address each issue as listed in the Detention Standard.

## A. <u>Requirements for Recreation</u>

The ICE Detention Standard for ICE Detainee Recreation requirements states: *"Every effort **SHALL** be made to place a detainee in a facility that provides outdoor recreation. If a facility does not have an outdoor area, a large recreation room with exercise equipment and access to sunlight **WILL** be provided. In exceptional circumstances, a facility lacking any recreation area may be used for provide **SHORT TERM** housing for detainees. All new or renegotiated contracts **WILL** stipulate that ICE Detainees have access to an outdoor recreation area. All*

*facilities **SHALL** provide recreational opportunities for detainees with disabilities".*

Though the Park County Detention Center does offer indoor and outdoor recreation facilities, it is extremely doubtful as to whether the facilities offered actually comply within the meanings of the terms indoor and outdoor recreation as required by the ICE Detention Standard.

The Petitioners categorically claim that both the indoor and outdoor recreation offerings by the Park County Detention Center are below the requirement of the ICE Detention Standard for ICE Detainees housed long term at the Park County Facility, and that compared to the Indoor/Outdoor recreation offering of the ICE Detention Facility in Aurora, the Park County offerings are quite meager.

## B. Park County Outdoor Recreation Offerings

Since the ICE Detention Standard does not offer a minimum requirement for outdoor recreation, the Petitioners can only assume that the outdoor recreation offerings at the ICE Detention Facility in Aurora would have to at least meet the minimum requirements of the ICE Detention Standards given that this facility is an ICE Processing Center and would therefore have a full understanding and application of all the ICE Detention Standards.

At the ICE Detention Facility in Aurora Colorado, Outdoor recreation is offered in the form of a large security fenced enclosure aside from the building, large enough to accommodate a full sized basket ball court with rings, volley ball court with net and sand, a numerous collection of different balls plus and outside weight and work out area, this area is open on 3 sides to the "outside world".

The Park County Detention Center's outside recreation area constitutes to NOTHING MORE than a concrete box 20 feet wide and 30 feet long and is fully enclosed by concrete walls 20 feet high on all 4 sides with no roof, there is NO room to play any kind of sport, to do any kind of substantial exercise and NO balls,

nets or recreational equipment is offered. This "ROOM" itself is barely big enough for 10-12 ICE Detainee's to walk around in circles or just sit down on the concrete.

## C. Park County Indoor Recreation Offerings

Though the Park County Detention Center's indoor recreation offerings are some what better than the outside, using the ICE Detention Facility in Aurora as a guide, the Park County Detention Center indoor recreation is well below standard.

The ICE Detention Facilities indoor recreation offers numerous activities for ICE detainees including 2 compound multiple weight training machines, 2 treadmills, 1 stair-stepper, 2 stationary bicycles, table tennis tables and equipment plus numerous pull up bars and other equipment also included as part of the indoor recreation is an outdoor room fully enclosed by concrete walls with no roof but large enough to contain a volley ball court and net complete with balls and equipment giving ICE Detainees numerous choices of activities to participate in.

The Park County Detention Center's indoor recreation area constitutes to NOTHING MORE than another small room approximately 12 feet by 20 feet containing 3 modern compound weight training machines and 2 old ones, there is NO other form of recreation or entertainment and NO natural light (sun light) as required by the ICE Detention Standards.

## D. Determining What is Meaningful Recreation?

What is Meaningful recreation by the ICE Detention Standard? Though ICE Detainees are permitted recreation periods, the Petitioners do NOT believe that the recreation activities and periods offered by the Park County Detention Center, meet the minimum requirements required by the ICE Detention Standards.

The ICE Detention Standard for a Recreation Schedule clearly states:

*"1.   If outdoor recreation is available at the facility, each detainee shall have access for **AT LEAST** one hour daily, at a reasonable time of the day, five days a week, **WEATHER PERMITTING**.*

*2.   If only indoor recreation is available, detainees **SHALL** have access for at least one hour each day and **SHALL** have access to **NATURAL LIGHT**. Under **NO** circumstances **WILL** the facility required ICE Detainees to forgo basic Law Library privileges for recreation privileges".*

However the Park County Detention Center does NOT meet even these minimum requirements, for example, ICE Detainees are only permitted 1 hour of recreation per day, six days a week comprising of 50 minutes of indoor recreation with NO NATURAL LIGHT and 10 minutes outdoor WEATHER PERMITTING, therefore ICE Detainees are only permitted a total of 1 hour per week of outdoor recreation well below the ICE Standard minimum requirement for outdoor recreation of 1 hour outdoor per day, baring inclement weather.

Furthermore the ICE Detention Standard clearly requires that ICE Detainees be permitted to 1 hour per day of outside recreation (WEATHER PERMITTING), the Petitioners are quite sure that when the ICE Office of General Counsel were constructing these ICE Detention Standards, they were NOT expecting ICE Aurora to house 50 of its Immigration Detainees at a Detention Facility that is at an altitude of over 10,000 feet and therefore virtually permanently subject to "Inclement Weather" (Snow and Rain) for a major part of the year, hence depriving ICE Detainees of any meaningful "outdoor recreation" or any indoor recreation with Natural Light, NOR would they have ever considered that ICE Aurora would EVER place ICE Detainees in a facility that obviously DOES NOT and has NEVER complied to their Detention Standards.

## E. Failure to Meet the Minimum Requirements for Program Content

The ICE Detention Standard specifically sets out minimum recreation program contents for all ICE Detainees that MUST be adhered to by the Park County Detention Center and Administrators and states as follows:

1. *Exercise areas **WILL** offer a variety of fixed and movable equipment. Weight training, if offered, will be limited to fixed equipment.*

2. *Cardiovascular exercise **SHALL** be available to detainees for whom outdoor recreation is unavailable. The indoor recreation area may, therefore be equipped with stationary bicycles, stair climbers, treadmills, and/or other cardiovascular exercise machines.*

3. *Recreational activities **SHALL** be based on the facilities size and location. With the Officer in Charge's approval, recreational activities may include limited contact sports, such as soccer, basketball, volleyball, table games, and may extend to competitions between units.*

4. ***ALL** detainees participating in outdoor recreation **SHALL** have access to drinking water and toilet facilities.*

5. *Detention or recreation staff **SHALL** issue all portable equipment items, and shall check each item for damage and general condition upon its return.*

6. *Programs and activities are subject to the facility's security and operational guidelines and may be restricted at the Officer in Charge's discretion.*

7. *Recreation area **SHALL** be under continuous supervision by staff. Staff supervising these areas **SHALL** be equipped with radios to maintain contact with the control center.*

8. *Contraband-searches of detainees moving from locked cells or housing units to recreation shall be conducted in accordance with the "Detainee Search" Standard.*

9. *Detainees may engage in independent recreation activities, such as board games and small group activities consistent with the safety, security, and orderly operation of the facility.*

10. *The Officer in Charge **SHALL** establish facility policy concerning television viewing in dayrooms. All television viewing schedules **SHALL** be subject to the Officer in Charge's Approval.*

As already proven, the Park County Detention Center fails to meet even the minimum requirement for ICE Detainee Recreation. Though Park County does offer limited weight training equipment it **fails to offer** any form of cardiovascular equipment at all. Park County offers absolutely **NO** outdoor activities whatsoever and any indoor games or activities have to be purchased by the ICE detainees from those listed in the commissary.

There is absolutely NO drinking water during outdoor recreation and neither indoor nor outdoor recreation offers any toilet facilities. There are NO soccer, basket or volley balls, nets or table tennis equipment offered by Park County, Not that there would be any place large enough for this equipment to be used if it was supplied.

Furthermore, ICE Detainees that do engage in independent activities, such as board games, do so at their own expense. ICE Detainees who wish to participate in board and card games etc. are required to purchase these games from the Commissary at incredibly inflated prices therefore disadvantaging those indigent and disabled.

Finally Park County Administrators DO NOT take and active role in television control and have NO policies regarding this issue other than to remove all television privileges for several days every time a fight breaks out, which usually happens on a regular basis endangering the health and safety of everyone.

## F. Transfer Option When No Meaningful Recreation Options are Available

The is an option available to ICE, in that, if there is NO meaningful indoor or outdoor recreation available for ICE Detainees housed at the Park County Detention Center, ICE Officers in Aurora CAN and SHOULD transfer ICE Detainees back to the ICE Aurora Detention Facility where all the ICE Detention Standards with regard to recreation can be met.

The ICE Detention Standard covering this procedure states as follows:

1. *When neither the required indoor or outdoor recreation opportunities is available at a facility, a detainee will be eligible for transfer to a facility providing recreational opportunities after 45 days......In exceptional circumstances, the 45 day time limit may be extended by 15 days......In NO case will the total time in detention exceed 60 days in a detention facility where NO recreational opportunities are available.......*

2. *As in section IIIC, above, any detainee eligible for a transfer SHALL have the option of voluntarily transferring to another detention facility.......*

3. *The Case officer SHALL provide the opportunity of accepting or waiving a voluntary transfer........*

4. *When a detainee has retained legal representation, the District SHALL consult with District Counsel to minimize interference with the detainee's legal representation. The Detainee WILL be transferred to the nearest facility with suitable space available.....*

5. *The District where the venue was originally established SHALL be responsible for costs incurred in returning the detainee to that venue for continuation of proceedings.*

6. *This Policy does not in any way address or limits the right of ICE to transfer a detainee involuntary when, in the judgment of ICE, it is in the best interest of the government or the detainee. Nor does this policy preclude ICE from seeking a change of venue, if appropriate, after review by the District Counsel.*

Basically what this Transfer Option entails is that it gives ICE Detainees and ICE Officers themselves the option of being able to transfer ICE Detainees to

another facility that can meet the necessary ICE Detention requirement with regard to recreation expectations.

Therefore all the Petitioners captioned above and those who are not, wish the Court to exercise its discretion and order ICE Aurora to transfer all 30+ ICE Detainees at the Park County Detention Center, back to the ICE Aurora Detention Center under this provision of this section due to the lack of any meaningful indoor recreation and now lack of any outdoor recreation at all.

## G. Recreation Relief Sought

All Petitioners respectfully request relief from this Honorable Court by Ordering the Respondents to adhere to all the Regulations of the ICE Detention Standards with the regards to the ICE Detainee Recreation requirements, these requests include that the Court Order the following:

1. That the Park County Detention Center be required to meet all of the ICE Detention Standards with regard to indoor and outdoor recreation and stated above, this is to include meaningful outdoor recreational activities as previously listed plus for Park County Administrators to meet the minimum indoor recreational activities as previously stated to also include all cardiovascular equipment and other indoor recreation activities such as table tennis and various table games at the Detention Centers expense.

3. That in the event that these minimum recreational requirements can NOT be met, or during the interim period until they are, that ICE Aurora Officers transfers all 40+ ICE Detainees housed at the Park County Detention Center, back to the ICE Processing Detention Facility in Aurora Colorado until this Court is satisfied that the ICE Detention Standards have been sufficiently met by the Officers and Administrators of the Park County Detention Center.

## 12. Failure of ICE Officers to Timely File Custody Reviews

The Petitioner's now come before this Honorable District Court, respectfully requesting this Court to issue orders compelling ICE Detention and Removal

Officers conduct the Petitioner's 90 Day File Custody Review as statutorily mandated by the Immigration and Nationality Act.

## A. ICE Officers Failure to Conduct Timely Custody Reviews

Furthermore the Code of Federal Regulation **8 CFR § 241.4 (h)(1)** specifically addresses this issue and sets forth definite guidelines that all ICE Detention and Removal Officers must follow with regard to the 90 Day File Custody Review of any alien who has a final order of removal and has NOT been removed with in the 90 Day "Removal Period". This Federal Regulation states as follows:

> "The District Director or Director of the Detention and Removal Field Office **WILL** conduct the initial custody review. For aliens described in paragraphs (a) and (b)(1) of this section, the District Director or Director of the Detention and Removal Field Office **WILL** conduct custody reviews **PRIOR** to the expiration of the Removal Period........" **8 CFR § 241.4 (h)(1)**.

As of the date of filing this Petition for Injunctive Relief, the following Petitioners have not been given the 90 Day File Custody Reviews in a timely manner as required by the Regulation. The Petitioners names and Custody Review dates are as follows:

| Petitioner | Review Due Date | Petitioner | Review Due Date |
|---|---|---|---|
| Mario Jean-Baptiste | Sept. 6, 2006. | Stanley Harmon | Sept. 6, 2006. |
| Yemane Haile | Aug. 12, 2006. | Hung Tran | Aug. 21, 2006. |
| William Gai | Aug. 8, 2006. | Baltazar Sosa | June 23, 2006. |
| Le Man | Aug. 24, 2006. | Rovey Morm | Aug. 12, 2006. |
| Tran Loi | Aug. 6, 2006. | Roy Berko | June 6, 2006. |
| V. Xayanoungkhow | Sept. 29, 2006. | Khalid Agina | Oct. 11, 2006 |
| F. Banal-Martinez | Oct. 5, 2006. | Gerald Remi | Aug. 1, 2006. |
| Francis Johnson | Aug. 11, 2006. | Chinh Nguyen | Sept. 26, 2006. |

The above listed Petitioners are all ICE Detainees housed at the Park County Detention Center. As can be clearly seen all listed Petitioners 90 Day File Custody Reviews are WAY OVER DUE, and therefore are NOT being conducted in a timely manner as required BY LAW. The listed Petitioners, all have at one stage or another, have sent written requests via "Kites" and letters requesting ICE Officers to conduct their 90 Day Custody Reviews in a timely manner as required by law, yet every time promises are made and NOT kept. **(See Exhibits Z11-4)**

Furthermore it is the general feeling amongst ICE Detainees transferred to Park County, that they have been placed here as a form of punishment for fighting there immigration cases, and therefore by ICE placing these Petitioners at Park County with below ICE standard conditions, it is the Petitioners firm belief that the purpose for the transfer was purely to encourage those Detainees to withdraw their cases.

Though this is only speculation, there appears to be an overwhelming indication of some substance to these assumptions given the WELL BELOW ICE Standards Conditions at the Park County Detention Center and the FACT that ICE Officers appear to be DELIBERATELY INDIFFERENT to the many requests of help from the ICE Detainees housed at the Park County Detention Center, this is evident by the numerous Kites sent to ICE Officers by ICE Detainees requesting relief to NO AVAIL.

Petitioner Le Man has experienced this run around by ICE Officers personally, though his 90 Day Custody review was due on August 24, 2006, still at the time of filing this Class Action Petition, Petitioner Man has NOT received his 90 Day Custody Review as required in spite of the NUMEROUS Kites and Letters requesting that ICE Officer Alex Almeida do so **(See Exhibits Z1-4)**, this issue became so much of a problem for all overdue ICE Detainee's listed above, in that the ICE Detainees were becoming frustrated with the lack of action by ICE Officer

Almeida and threaten action of a Hunger Strike or worse to Administrator Lt. Daniel Muldoon who was the only person left that the ICE Detainee's could take their frustrations out on.

Obviously NOT wanting any further trouble in his Detention facility, Administrator Lt. Muldoon contacted ICE Officer Alex Almeida explaining to him the desperateness of the situation and the necessity of ICE to complete all necessary outstanding 90 Day Custody Reviews, ICE Officers Almeida relayed back to Administrator Muldoon that he would have all Custody Review completed within the week and that he would attempt to attend the Park County facility the following week, **(See Exhibit Z3)** however, as per usual, these empty promises were just more lies to add to their already long list and as of filing this Petition for Class Action Injunctive Relief, **NO** **such action has been taken by ICE Officers.**

## B. <u>ICE Officers Failure to Issue Required Notice Prior to Custody Review</u>

Finally, it is a legal requirement that ICE Officers issue an ICE Detainee, who has NOT been removed, a "Letter of Custody Review" pursuant to **8 CFR § 241.4 (h)(2)** 30 days prior to when the ICE Detainees Custody Review is scheduled to take place, the purpose for legally required courtesy letter, is to give the ICE Detainee and opportunity to submit any documents or letters in his favor, to support his possible release from ICE custody.

This Federal Regulation clearly states as follows:

> "**NOTICE TO ALIEN**. The District Director of the Detention and Removal Field Office **WILL** provide written notice to the detainee approximately 30 days in advance of the pending records review so that the alien may submit information in writing in support of his or her release. The alien may be assisted by a person of his or her choice.........If the alien or his or her representative requests additional time to prepare materials beyond the time when the District Director expects to conduct the records review, such a request will constitute a

waiver of the requirement that the review occur **PRIOR** to the expiration of the removal period". **8 CFR § 241.4 (h)(2)**

Virtually ALL ICE Detainees, since being housed at the Park County Detention Center have been forgotten when comes to ICE Officers issuing either the required Notice of Custody Review or the actual review itself. This situation has become so bad that ICE Detainees have taken it upon themselves to write letters to ICE Officers at the ICE Aurora Office, requesting this Notice of Custody Review be issued even after the 90 Day removal period with which ICE Officers must perform this Custody Review, has expired.

## C. Custody Review Relief Sought

All Petitioners respectfully request relief from this Honorable Court by Ordering the Respondents to adhere to all the Regulations of the ICE Detention Standards with the regards to the ICE Detainee Recreation requirements, these requests include that the Court Order the following:

1. That ALL ICE Officers of Detention and Removal at the ICE Processing Center in Aurora, Colorado, be ordered to issue ALL ICE Detainees anywhere within their District Jurisdiction, the required "Notice of Custody Review" on or about 30 days **PRIOR** to the a specific ICE Detainees File Custody Review as statutorily required by **8 CFR § 241.4 (h)(2)**.

2. That ALL ICE Officers of Detention and Removal at the ICE Processing Center in Aurora, Colorado, be ordered to conduct ALL ICE Detainee File Custody Reviews of ICE Detainees anywhere within their District Jurisdiction, on or before the expiration of the ICE Detainee's 90 Day Removal Period as specifically and Statutorily MANDATED by **8 CFR § 241.4 (h)(1)** and that ANY overdue Custody Reviews be conducted immediately and that failure to do so will trigger sanctions by the Court, of any relief that this Honorable Court deems as just and proper.

# VIII PETITION FOR PRELIMINARY INJUNCTIVE RELIEF

The Petitioners collectively request this Honorable District Court, via this Petition for Preliminary Injunctive Relief, for an immediate Preliminary Injunction ordering the Respondents (ICE) to transfer the Petitioners back to the physical custody of the GEO/ICE Processing Center in Aurora, Colorado, as an immediate remedy until the merits of this case can be argued. The Petitioners would respectfully request that this Preliminary Injunction be granted as the numerous violations of the ICE Detention Standards by the Park County Detention Center **are many**, and that it would require considerable time, effort and money on behalf of the Park County Detention Center and the Department of the Immigration and Customs Enforcement acting jointly to correct all the necessary requirement to bring the Park County Detention Center up to the required ICE Standards therefore the Petitioners are requesting this Court for a Preliminary Injunction Order pursuant to FRAP 10th Cir. Rule 8.1 for all ICE Detainees to be relocated back to the ICE Processing Center in Aurora.

## A. Standard of the Review

The purpose of the Preliminary Injunction is to preserve the Status Quo or protect rights pending the final determination of a case. *Combined Communications Corp v. City & County of Denver, 186 Colo. 443, 528 P.2d (1974);* appeal after remand *189 Colo. 462, 542 P.2d 79 (1975);* A Preliminary Injunction will be used to prevent further harm from occurring to the applicant where harm is alleged, or to grant emergency relief where a hearing on the merits at a later date is contemplated. *Graham v. Hoyl, 157 Colo. 338, 402 P.2d 604 (1965)*

For the purposes of dismissing a motion, the court must accept all factual allegations in the complaint as true and resolve all reasonable inferences in the

Petitioners favor. *see Morse v. Regents of the University of Colorado, 154 F.3d 1124, 1126 (10th Cir. 1998); also Seamons v. Snow, 84 F.3d 1226, 1331-32 (10th Cir.1996);* A motion should not be dismissed for failure to state a claim unless the court determines beyond doubt that the petitioner can prove no sets of facts which entitles him to relief. *See Hishon v. King& Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 45-46 (1957).*

Under an Eight Circuit precedent, a Preliminary Injunction may only be granted if the moving party can demonstrate, **1.**    The likelihood of success on the merits, **2.**    That the Movant will suffer irreparable harm absent the restraining order, **3.**    The balance of harms favors the Movant and, **4.**    That the public interest favors the Movant. *see- Dataphase Sys. Inc. v. C.L. Sys. Inc., 640 F.2d 109, 113 (8th Cir. 1981).*

*"None of these factors by itself is determinative, rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a Preliminary Injunction".* Also see *West Pub. Co. v. Mead Data Cent. Inc., 799 F.2d 1219, 1222 (8th Cir. 1986), cert. denied, 479 U.S. 1070 (1987), "The party requesting the injunctive relief bears the* **complete burden** *of proving all the factors listed above. See Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987).*

## 1. <u>Likelihood of Success on the Merits in the Petitioners Case</u>

The Petitioners firmly assert that the likelihood of success of this action for Preliminary and Permanent Injunctive Relief before this Honorable Court is GREAT given the fact that the Respondents have committed a multitude of Statutorial and Constitutional violations including the fact that:

**(a)** ICE **DID NOT** prescreen the Park County Detention Center for compliance with the ICE Detention Standards before moving ICE Detainees to that facility and

that if they did then ICE Officers remain extremely negligent for approving the Park County Detention Center to house ICE Detainees when Park County is clearly NOT suitable or capable of doing so;

**(b)** The Park County Administrators DID NOT, CAN NOT and WILL NOT comply with the ICE Detention Standards even after ICE Detainees made the Administrators very aware of their violations plus the fact that the Administrators have a copy of the ICE Detention Standard held at the Pod Desk therefore demonstrating a DELIBERATE INDIFFERENCE toward all the ICE Detainees housed at their facility;

**(c)** ICE Officers at the ICE Processing Facility in Aurora, Colorado DID NOT responding to the multitude of requests and grievances by ICE Detainees for relief therefore also demonstrating an act of DELIBERATE INDIFFERENCE toward the health, safety and well being of ALL ICE Detainees at the Park County Center;

**(d)** ICE Officers further demonstrated a total lack of respect for any of the rules and regulations of the Immigration and Nationality Act with regards to the detention, removal and release of the ICE Detainees at the Park County Detention Center by NOT issuing Notice of Custody Review letters 30 prior to the detainees schedule custody review and furthermore by NOT conducting ICE Detainee custody reviews before the expiration of the 90 day removal period as specifically statutorily mandated by law even after numerous requests by various ICE Detainees to do so.

## 2. Irreparable Harm Absent the Restraining Order

The Petitioners collectively categorically claim that they will suffer irreparable harm if this Honorable Court does NOT immediately intervene given the fact of the numerous severe issues including **(a)** the NEAR DEATH of Petitioner

Zamorano due to the refusal of medical care by Park County, **(b)** the continual pain and suffering absent the much required medical care, of many of the ICE Detainees housed at Park County including Petitioner Farinas-Perez, **(c)** the continual medication of ICE Detainees, with psychotropic medication and **NO** specifically trained Psychological Physician to monitor and re-medicate, if necessary, those Detainees at the Park County facility therefore creating a dangerous situation the medicated detainee, the un-medicated detainees around them and the offices of the Park County Detention Center, **(d)** the refusal of any adequate dental care by Park County toward ICE Detainee causing costly if NOT irreparable damage to ICE Detainees teeth as discovered by Petitioner Agina, **(e)** the irreparable harm to ICE Detainees immigration cases due to the lack of any useful or meaningful law library resources at the Park County facility, **(f)** the probable harm and possible irreparable damage to detainees health, safety and MENTAL well being, by Park County Administrators exercising the very DANGEROUS practice of mixing all classifications of ICE Detainees together in a single housing unit against all Federal Regulation and policies yet with the approval of ICE Officers, **(g)** the possible health, safety and well being of all ICE Detainees housed at the Park County Detention Center, due to inadequate or non existent recreation facilities.

Petitioner Vaupel clearly wishes the Court to realize that these are only a few of the many issues causing harm to ICE Detainees housed at the Park County facility and without this Courts much needed immediate intervention, Petitioner Vaupel along with others, only fears that this already very DANGEROUS situation at Park County will only GET WORSE, the spirits are very low and the moral of the detainees is virtually non existent, living in this housing unit at the Park County Detention Center is like living in a pressure cooker that is about ready to blow, there are already numerous daily scuffles between detainees along with one full on riot already, in which a television and other goods were destroyed due to the lack

relief and any of the above topics, therefore it is the firm belief of all the Petitioners that if this Court does NOT order the immediate relief sought, IRREPARABLE HARM will be caused to all ICE Detainees housed at the Park County Detention Center.

## 3. Balance of Harms

The Petitioners on the other hand firmly believe the Balance of Harms weighs heavily in their favor in that the Respondents will suffer little or NO harm by relocating the 40+ ICE Detainees housed at the Park County Detention Center, back to the ICE Detention Facility in Aurora, Colorado, the ICE Detention Facility is already fully equipped and capable of meeting all the requirement of the ICE Detention Standards as ICE Detainees are the only form of detainee they handle and therefore a much better suited to deal with all the day to day issues of ICE Detainees which are vastly different to those of Criminal Detainees.

Furthermore the Government would be able to save Tax Payers Dollars and their own much needed resources by NOT having to spend the Time and Money in employing ICE officers to drive to Park County weekly, attempt to deal with the many ICE Detainee issue once returned to the office and finally and most importantly, the Government would NOT have to spend the incredible amounts of Tax Payers dollars needed to make the Park County facility viable including thousands of dollars worth of law book etc plus the enormous funds paid to the Park County Administrators to house these ICE Detainees in the first place.

Though the Government will argue that the Park County Detention Center is required to house OVERFLOW ICE Detainees due to overcrowding at the ICE Aurora facility, the Petitioner will rebut this claim by stating that this overcrowding issue as previously raised by the Government is nothing more than an Smoke and Mirrors game in order to procure more funding, this is evidenced by the sworn affidavit of Murphy Stephens Wamala and Benad Abiodun who, only

after recently being transferred to the Park County Center, have categorically claimed that half the pods in the ICE Aurora Detention Facility were only filled to ONE THIRD capacity leaving many beds unused. **(See Exhibits Z5-6)**

## 4. **Public Interest**

The Petitioners collectively firmly assert that the Public Interest also weighs heavily in their favor, in fact, in the favor of all ICE Detainee and member of the public given the fact that there is already a facility which is capable of housing and caring for these ICE Detainees in a proper manner in accordance with all the rule and regulations specifically put in place to by this Nations great leaders, to prevent this kind of treatment.

Also after carefully reading all the relevant laws, rules, regulations and standards, it clearly demonstrates a strong indication of the public interest in protecting the health, safety and well being of all ICE Detainees along with the effective and efficient processing and removal **OR** release of those detainees, plus with the concerns and support of other interested parties such as the American Civil Liberties Union, the Rocky Mountain Immigrant Advocacy Network, the American Association of Law Libraries and the ACLU National Prisons Project who have all held out a helping hand in the production of this action, ONLY further supports and demonstrates that the Public Interest weighs heavily in their favor.

# IX MOTION FOR APPOINTMENT OF CLASS COUNSEL

**COMES NOW** Petitioner Jon Vaupel representing all captioned Petitioners and unknown Petitioners, present and future, proceeding Pro Se hereby before this Honorable District Court files this "Motion for Appointment of Class Counsel" pursuant to 18 § 3006A (a)(2)(B), respectfully requesting that this Honorable District Court appoint the Petitioners Class Counsel for the representation of this above captioned Class Action Case before this District Court.

The Petitioners all further claim that they are able to comprehensively demonstrate to this Court that this Class Action Case has substantial merit and that the complexities and Administration of a Class Case of this magnitude warrants the appointment of Counsel by this Court in the interests of Justice so that the Petitioners may present there case on an equal standing to that of the Respondents.

The Petitioners as a whole have been detained and isolated by ICE Officers and detained at the Park County Detention Center in Fairplay, Colorado, the Petitioners categorically claim that they have NO resources or Legal Training to be able to represent themselves in a case of this nature and complexity. The Petitioners also categorically claim that they collectively are UNABLE to finance a case of this nature due to their prolonged ICE Detention.

Finally as the Petitioners are very limited in their communication to the outside world including any FREE legal service provider as previously explained it is necessary to respectfully request this Honorable Court to Appoint Class Counsel to represent them in this Class Action Case.

**WHEREFORE** the Petitioners represented in this above captioned case respectfully request and pray that this Honorable District Court appoint them Class Counsel to represent them in all further actions within this Court.

# X PRAYER FOR RELIEF

Plaintiff/Petitioner Jon Vaupel along with all the Captioned and Non Represented Petitioners present and future respectfully request and pray that his Honorable District Court **GRANT** the following relief:

1. Assume jurisdiction over this matter.

2. Grant the Petitioners the relief they seek in the form of a Permanent injunction therefore requiring the Respondents to comply with the relief sought in section **VII**, subsections **1K, 2I, 3H, 4H, 5D, 6D, 7D, 8B, 9D, 10E, 11G** and **12C.**

3. Enter Preliminary Injunctive relief therefore enjoining the Respondents from detaining any ICE Detainees at the Park County Detention Center until the Respondents can conclusively prove, to this Honorable Court, that the Park County Detention Center meets all the required ICE Detention Standards, further more the Petitioners request that this Court grant immediate relief from these below standards conditions by ordering ICE to relocate all ICE Detainees back to the ICE Detention Facility in Aurora, Colorado until further notice of this Court.

4. That the Court Order ICE Officers of Detention and Removal at the ICE Processing Facility in Aurora, Colorado, immediately conduct ALL outstanding 90 Day Custody Reviews of ALL ICE Detainees detained within their jurisdiction as statutorily required by 8 CFR § 241.4 (h)(1).

5. That the Court appoint Class Counsel who can adequately and competently represent all members of the class without conflict as all members of the class are incarcerated, indigent and without the legal qualifications or access to legal equipment or materials to satisfactorily represent the class competently.

6. That upon Appointment of Class Counsel the Court issue and order requiring Discovery of all claims and Grant Class Certification in this Action as the Petitioners have conclusively defined the class definition and evidenced numerosity.

7. That the Court Order that their shall be NO retaliation, reprisals, or penalties toward any of the Petitioners by any Respondents or their Representatives because of the Petitioner's decision to seek judicial relief for there continued repetitive below ICE Detention Standard conditions and treatment while under detention.

8. Grant the Petitioner any other and further relief that this Court deems as just and proper.

# XI CONCLUSION

**WHEREFORE** the Plaintiff/Petitioner Jon Vaupel on behalf of all above Captioned Petitioners and ICE Detainees unrepresented, in the present and the future, who are and may be housed at the Park County Detention Center, respectfully requests and Prays that this Honorable District Court GRANT the relief the Petitioners seek in the form of an Immediate Preliminary Injunction/Temporary Restraining Order mandating that all ICE Detainees housed at the Park County Detention Center be immediately relocated back to the ICE Processing Center in Aurora Colorado until the merits of the Petitioners Class Action Petition for Permanent Injunctive Relief requiring the Respondents to make the necessary changes at the Park County Detention Center so that it conforms to all ICE Detention Standards, can be argued and hence conclusively prove to this Court that all required ICE Detention Standard have been met.

Dated this 27th Day of October, 2006,

Respectfully Submitted By,

Jon Vaupel – Representing

Murphy Wamala, Mario Jean-Baptiste
Le Man, Hung Tran, Khalid Wahab,
Tran Loi, Stanley Harmon, Chinh Nguyen,
Alfredo Farinas-Perez, Igor Margatskiy,
Gerald Nkwanga, Francis Johnson,
Anerobi Ngwabe, O'Neil Stewart,
Gerald Remy, Riziki Temu, Jose Zamorano
Arben Kola, Rovey Morm, Benad Abiodun,
Franciso Banal-Martinez, Roy Berko and
Vakhom Xayamoungkhoun, Yemane Haile
Christopher Lukanga, (Hereinafter Petitioners)

Park County Detention Center
1180 County Road 16
P/O Box 965
Fairplay, Colorado 80440

# CERTIFICATE OF MAILING

I hereby certify that on this 27th day of October, 2006, a true and correct type written copy of the Petitioners **"Class Action for Preliminary and Permanent Injunctive Relief "** was mailed via U.S. Mail and properly addressed to:

## Respondents:

Alberto Gonzales
United States Attorney General
Office of the Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Michael J. Garcia – Secretary
Immigration & Customs Enforcement
U.S. Department of Homeland Security
Washington, D.C. 20528

Michael Chertoff
Secretary in Chief
United States
Department of Homeland Security
Washington, D.C. 20528

Douglas Maurer
Field Officer Director for Denver
Immigration & Customs Enforcement
4730 Paris Street
Denver, Colorado 80239.

## Park County Facility:

Frederick Wegener
Sheriff of Park County
Park County Detention Center
1180 County Road 16, P/O Box 965,
Fairplay, Colorado 80440.

Lt. Daniel Muldoon
Chief Administrator
Park County Detention Center
1180 County Road 16, P/O Box 965,
Fairplay, Colorado 80440.

## Agency Counsel:

Douglas Bow, Esq.
U.S. Dept. of Homeland Security
District Counsel
4730 Paris Street
Denver, Colorado 80239.

Jon Vaupel – Representing all Petitioners
Park County Detention Center
P/O Box 965,
Fairplay, Colorado 80440
Phone (719) 836-4370